693 So.2d 818 (1997)
Stacy SPENCER
v.
GAYLORD CONTAINER CORPORATION.
No. 96 CA 1230.
Court of Appeal of Louisiana, First Circuit.
March 27, 1997.
Order On Rehearing May 28, 1997.
*820 Kirk L. Landry, Baton Rouge, for Defendant/Appellant Gaylord Container Corporation.
Cassandra K. Beasley, Covington, for Plaintiff/Appellee Stacy Spencer.
Before WATKINS, GONZALES and KUHN, JJ.
GONZALES, Judge.
This appeal follows the award of workers' compensation benefits, penalties, interest and attorney's fees to plaintiff, Stacy Amanda Spencer, against her former employer, Gaylord Container Corporation (hereinafter "Gaylord"). Gaylord appeals and makes the following specifications of error:
1. The Hearing Officer committed legal error in ordering Defendant to pay to Plaintiff "her weekly compensation payments."
2. The Hearing Officer committed legal error in awarding future indemnity and medical benefits.
3. The Hearing Officer committed legal error in awarding penalties and attorney's fees against Defendant employer who was fully insured for its Workers' Compensation obligations.
4. Alternatively, the Hearing Officer committed manifest error in determining that the Defendant was arbitrary and capricious in any aspect of the administration of Plaintiff's Workers' Compensation claim.
5. The Hearing Officer committed legal error in awarding prejudgment interest.

FACTUAL AND PROCEDURAL BACKGROUND
On March 11, 1994, Ms. Spencer was engaged in the course and scope of her employment with Gaylord as a laminator assistant, when she slipped on a piece of paper lying on the floor of her work area, while carrying a stack of box liners. Plaintiff testified that her knee "went out." The accident was witnessed by other employees and was immediately reported to plaintiff's supervisor. Plaintiff completed the remaining two hours of her shift sitting down. On returning to work the following evening, plaintiff was only able to work approximately thirty minutes before she reported to her supervisor in pain. Plaintiff was seen at the Bogalusa Medical Center emergency room that evening and thereafter by the company doctor, Dr. Appurao Jay.
Dr. Jay prescribed an initial course of treatment consisting of anti-inflammatory medication and physical therapy. Plaintiff's condition was not alleviated, and she was referred to an orthopedic specialist, Dr. Roch *821 Hontas. Plaintiff complained to Dr. Hontas of continued pain and tenderness in her knee with occasional popping. After receiving treatment for tendinitis, plaintiff was released to return to work in July of 1994. Plaintiff's complaints of pain increased during the two months she worked, prompting Dr. Hontas to again restrict her from working and to prescribe another round of physical therapy. Thereafter, an MRI was performed which indicated a possible medial meniscus tear. In November of 1994, plaintiff underwent an arthroscopic partial right medial meniscectomy and an additional course of physical therapy. By letter of February 27, 1995, Dr. Hontas released plaintiff to return to light duty work "with the restrictions as noted on the modified job activity form." Although the modified job activity form does not appear in the record, in a subsequent letter, Dr. Hontas stated that plaintiff's light duty activity "needs to be modified so that this will allow her to sit for two to three hours during the course of her eight hour work day. Standing should be alternated with sitting. Stair climbing and squatting should also be restricted to one-third of her work day."
Plaintiff testified that she reported to Gaylord for light duty work in March of 1995. She states that she was not returned to her old position but was instead assigned, along with another person, to clean upstairs offices for approximately two hours, followed by cleaning the employee break room for the next thirty to forty-five minutes. Thereafter, she spent the remainder of her work day painting poles and painting lines on floors. Plaintiff testified that she was given fifteen minutes in the morning for break and fifteen minutes for lunch. Plaintiff further testified that she never had the opportunity to sit down for two to three hours as recommended by Dr. Hontas, and, she had to climb stairs, stoop and squat contrary to Dr. Hontas' restrictions. Plaintiff stated that she informed Bryan Freeman that she would need a sit-down job.
Plaintiff's employment was subsequently terminated by Gaylord and her workers' compensation benefits were discontinued.
Dr. Hontas' reports continued to maintain the limitations originally imposed on plaintiff's return to light duty work. And, in September of 1995, Dr. Hontas began recommending to plaintiff that she undergo an additional surgical procedure to arthroscopically debride the plica. In March of 1996, Dr. Hontas stated in his last report prior to the workers' compensation hearing of this matter:
[Plaintiff] still has tenderness over her plica. There is popping of the plica noted over the medial femoral condyle. She has no effusion. No signs of instability are present.
Ms. Spencer has continued to show signs of the development of a pathologic plica. She has been resistant to non-operative care. The only other recommendation would be to have the plica arthroscopically excised.
The surgery recommended by Dr. Hontas was never approved by defendant or its insurer.
Thereafter, plaintiff filed a Disputed Claim Form with the Office of Workers' Compensation on August 28, 1995. A hearing on the matter was conducted on March 25, 1996, and a "judgment"[2] was rendered by the Workers' Compensation Hearing Officer (hereinafter "WCHO") on April 3, 1996, ordering Gaylord to pay plaintiff "her weekly worker's [sic] compensation payments from the date that they were cut off to the present and into the future until her conditions change." The WCHO further ordered that defendant "receive credit for any overpayment of weekly compensation," and ordered defendant to "authorize the outpatient operation recommended by claimant's treating physician." The WCHO decision also stated, "Defendants are to continue paying claimant's medical cost [sic]." Additionally, the WCHO found, "the defendant acted in an arbitrary and capricious manner in terminating *822 claimants [sic] weekly compensation and in not approving claimant's operation and they are to pay claimant penalties, interest and attorney's fees in the amount of Four Thousand Dollars in accordance with the statute."

WORKERS' COMPENSATION BENEFITS

Assignment of Error (1)
In Gaylord's first assignment of error, it is argued, that the WCHO erred in failing to designate whether plaintiff has been found permanently totally disabled, temporarily totally disabled, permanently partially disabled or entitled to supplemental earnings benefits; and regardless, no benefits are due plaintiff. Plaintiff responds in her brief to this court that the WCHO decision "implicitly awards whatever type benefits were being paid at the time they were wrongfully terminated." (Emphasis omitted.) Both parties acknowledge that plaintiff was paid temporary total disability benefits during the periods of time she was restricted from working by her physician.
The payment of total disability benefits, either permanent or temporary, is authorized by La.R.S. 23:1221 only where an employee is disabled to the extent that he cannot "engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience." La. R.S. 23:1221(1)(a) and (2)(a). Both La.R.S. 23:1221(1)(c) and 23:1221(2)(c), governing temporary total disability and permanent total disability, respectively, state that "whenever the employee is not engaged in any employment ... total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment."
The WCHO apparently accepted the opinion of Dr. Hontas that plaintiff is able to engage in light duty work, inasmuch as, the WCHO quoted extensively from Dr. Hontas' reports and in chastising defendant for having "paid no attention to Dr. Hontas' reports." We find no manifest error in the WCHO's factual finding that plaintiff is able to work. See Noveh v. Broadway, Inc., 95-2081, pp. 3-4 (La.App. 1st Cir. 5/10/96) 673 So.2d 349, 351, writ denied, 96-1431 (La.9/13/96) 679 So.2d 109. However, the WCHO erred in failing to apply the statutory provisions cited hereinabove. An employee is not entitled to collect either temporary total disability or permanent total disability when he is physically able to engage in any employment. LeBlanc v. Commercial Union Assurance Company, 349 So.2d 1283, 1288 (La.App. 1st Cir.), writ denied, 351 So.2d 174 (La.1977); Rachal v. Crown Store Equipment Co., 93-1602, p. 2 (La.App. 3d Cir. 6/1/94) 640 So.2d 730, 732. Therefore, to the extent temporary total disability or permanent total disability were awarded, that award is hereby reversed.
Nevertheless, we find plaintiff to be entitled to supplemental earnings benefits, as authorized by La. 23:1221(3) which reads, in pertinent part:
Supplemental earnings benefits.
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined *823 to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.
To recover workers' compensation supplemental earnings benefits, an employee must prove he has been injured in a work-related accident, which rendered him disabled from earning ninety (90%) percent or more of his former earnings. Holley v. Baton Rouge Aircraft, Inc., 94-0553, pp. 4-5 (La.App. 1st Cir. 3/3/95) 652 So.2d 658, 660, writ denied, 95-0878 (La.5/12/95) 654 So.2d 353. The question of whether plaintiff's injury prevents him from obtaining employment earning ninety percent of his pre-injury wages is a question of fact which an appellate court may not set aside absent manifest error. Morris v. Norco Construction Company, 632 So.2d 332, 335 (La.App. 1st Cir.1993), writ denied, 94-0591 (La.4/22/94) 637 So.2d 163. Once the employee has satisfied this burden, the employer may then preclude an award of supplemental earnings benefits by proving that the employee is physically able to perform work that was offered to him or that was available in the employee's or employer's community or a reasonable geographic location. Fontenot v. Trans Gulf, Inc., 95-0342, pp. 10-11 (La.App. 1st Cir. 11/9/95) 664 So.2d 1238, 1246; Morris v. Norco Construction Company, 632 So.2d at 334.
The parties do not seriously dispute that plaintiff is able to perform light duty work, but rather, the issue is whether Gaylord has established plaintiff is physically able to perform work that was offered to her or that was available in the community or a reasonable geographic location. Gaylord's "safety director," Bryan Freeman, testified that Gaylord provided plaintiff with a light duty job which it felt met the restrictions imposed by her physician. Mr. Freeman stated that it was intended that plaintiff be allowed to sit on a five-gallon bucket while she was painting; however, he did not know whether she had been provided one. Mr. Freeman stated that plaintiff was told not to do anything against the advice of her doctor or that would aggravate her injury. Mr. Freeman also related that he communicates to employees on light duty that they can take as many breaks as they need, but he had no indication that plaintiff asked for any more than the two breaks normally given to non-injured employees. Mr. Freeman did admit that on at least one occasion when he passed plaintiff at work, she complained to him of pain, and he told her to contact her doctor. Mr. Freeman further testified that plaintiff's employment was terminated following her unsubstantiated assertions to him that her doctor would not allow her to stand at all on the job and subsequent failure to report to work.
The reasons assigned by the WCHO reflect the following:
On March 6th, 1995 claimant returned to light duty work with specific restrictions placed on her by Dr. Hontas. There is a question as to whether or not Dr. Hontas' restrictions were adhered to and according to the testimony of claimant they were not. In the medical notes of Dr. Hontas for March 6th, 1995 states: C/o painState [sic] "They made me stand on my feet all day". [A]nd on the next page of Physician's progress notes it stated that claimant stopped work after [a] week because it hurt her too much. And in the notes of 7/13/95 they say: "Pt states her job is still terminated despite Dr.'s [sic] Roch's last dictation." Dr. Hontas keep [sic] defendant *824 informed of claimant's medical treatment in numerous letters.... The defendant and it's insurer have paid no attention to Dr. Hontas' reports and recommendations. [Footnote omitted.]
The WHCO obviously found that Gaylord failed to prove that work was available to plaintiff which met the physical restrictions imposed on her by Dr. Hontas. We find no error in this factual finding. Therefore, plaintiff is entitled to supplemental earnings benefits at the rate of sixty-six and two-thirds percent of her average monthly wages at the time of injury.[3]

FUTURE BENEFITS

Assignment of Error (2)
Gaylord contends, in its second assignment of error, that the WCHO erred in ordering compensation payments be paid to plaintiff "into the future until her conditions change." As provided by La.R.S. 23:1221(3)(a), an SEB benefit is determined by a comparison between the average monthly wages at the time of injury to the average monthly wages earned or which the employee is able to earn, and is made on a monthly basis. Thus, the amount of supplemental earnings benefits to be paid to plaintiff may be subject to change in any month in which defendant is able to show plaintiff is actually earning wages or is able to earn wages in accordance with La.R.S. 23:1221(3)(c)(i).[4]Cf. Prevost v. Jobbers Oil Transport Company, 95-0224, p. 5 (La.App. 1st Cir. 10/6/95) 665 So.2d 400, 404, writ denied, 96-0440 (La.4/8/96) 671 So.2d 336; Woolsey v. Cotton Brothers Bakery Co., 535 So.2d 1119 (La. App. 2d Cir.1988), writ denied, 537 So.2d 1168 (La.1989).[5] Therefore, we amend the WCHO decision requiring defendant to pay compensation benefits to plaintiff "into the future until her conditions change" to read "in accordance with La. R.S. 23:1221(3)."
Additionally, Gaylord assigns as error the WCHO order to defendants to "continue paying claimant's medical cost [sic]," arguing that this language constitutes an award of future medical expenses. An employer's liability to an employee for medical expenses arises only as the medical expenses are incurred. Prevost v. Jobbers Oil Transport Company, 95-0224 at p. 5, 665 So.2d at 404; Durand on Behalf of Durand v. National Tea Co., 607 So.2d 573, 576 (La.App. 1st Cir.1992), writ denied, 612 So.2d 101 (La.1993).[6] Therefore, this portion of the WCHO order is reversed.

PENALTIES AND ATTORNEY'S FEES

Assignments of Error (3)(4)
In Gaylord's third assignment of error, it contends that in instances where an employer's workers' compensation obligation is covered by insurance, the employer cannot be held liable for penalties and attorney's fees. In support of this argument, Gaylord *825 cites: Comeaux v. Grey Wolf Drilling, 93-1289 (La.App. 3d Cir. 5/4/94) 640 So.2d 532, writ denied, 94-1339 (La.9/16/94) 642 So.2d 193.
The relevant statutory provisions are La. R.S. 23:1201(E.) and 23:1201.2, which at the time of plaintiff's injury provided, in pertinent part[7]
[La.R.S. 23:1201(E.)[8]:]
If, pursuant to this Chapter, any compensation or medical benefits payable without an order is not paid within the time period provided in Subsection B, C, or D of this Section, there shall be added to such unpaid compensation a penalty of an amount equal to twelve percent thereof or a total penalty of not more than fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. No amount paid as a penalty under this Subsection shall be included in any formula utilized to establish premium rates for worker's compensation insurance. Whenever the employee's right to such compensation or medical benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent or fifty dollars per calendar day, whichever is greater, additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay. No worker's compensation insurance policy shall provide that this sum shall be paid by the insurer if the administrative hearing officer determines that the twelve percent or fifty dollars per calendar day, whichever is greater, additional payment is to be made by the employer rather than the insurer. Any additional compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee. The total fifty dollar per calendar day penalty provided for in this Subsection shall not exceed two thousand dollars in the aggregate. [Emphasis added.]
[La. R.S. 23:1201.2[9]:]
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, *826 shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. [Emphasis added.]
The law applicable to plaintiff in the instant case, as cited, reveals that a penalty imposed under La. R.S. 23:1201 can be imposed against either the employer or the insurer "depending upon who was at fault in causing the delay" in payment of workers' compensation benefits. However, under La. R.S. 23:1201.2, reasonable attorney's fees can only be assessed against the employer "whose liability for claims ... is not covered by insurance." This anomaly was introduced into the law by La. Acts 1983, 1st Ex. Session, No. 1, § 1, eff. July 1, 1983, which separated the penalty and attorney's fees provisions in separate statutes, namely articles 1201 and 1201.2, respectively. Previously, both penalty and attorney's fees were treated in article 1201.2.
Appellant's reliance on the Comeaux case is misplaced, as the court therein obviously failed to take into account the 1983 amendments to the relevant statutory provisions. The plaintiff in Comeaux was injured on February 14, 1992, after La. R.S. 23:1201.2 was amended to provide only for attorney's fees and excepted an employer whose liability is covered by insurance. Comeaux nevertheless stated, "It is well established that an employer insured by a worker's [sic] compensation insurer cannot be held liable for penalties and attorney's fees." (Emphasis added.) In so holding, Comeaux cited the cases of Charles v. Aetna Casualty & Surety Co., 525 So.2d 1272 (La.App. 3d Cir.), writ denied, 531 So.2d 480 (La.1988), and Fontenot v. Great Southern Oil & Gas Co., 434 So.2d 621 (La.App. 3d Cir.1983). The holding in the Charles case correctly states, "[W]hen the employer is insured, only the insurer, not the employer, is liable for the payment of the attorney's fees"; the opinion did not address penalties. And while the Fontenot court did hold that "an employer who `is not covered by insurance' is subjected to the same penalty" as "an insurer [who] is liable for penalties and attorney's fees," the date of the Fontenot compensable accident was November 1, 1980, prior to the change in the law; therefore, the Fontenot holding was correct. Consequently, we find that Comeaux failed to correctly apply the law pertinent to the factual circumstances under consideration. We note this circuit in Henderson v. New Medico Associates, Inc., 95-0488, p. 11 (La.App. 1st Cir. 11/9/95) 667 So.2d 1094, 1100, writ denied, 96-0505 (La.4/8/96) 671 So.2d 338, held, "Pursuant to LSA-R.S. 23:1201.2, attorney's fees may be assessed only against an insurer or against a self-insured employer." Appellant's argument is therefore pertinent only to statutory attorney's fees. Thus, we reverse that portion of the WCHO decision awarding attorney's fees against Gaylord.[10]
With respect to penalties imposed against it, Gaylord argues, alternatively, that the WCHO committed manifest error in determining that Gaylord was arbitrary and capricious in any aspect of the administration of plaintiff's workers' compensation claim. The WCHO gave the following reasons for imposing a penalty against the defendant in this matter:
The defendant and it's [sic] insurer have paid no attention to Dr. Hontas' reports and recommendations. Dr. Steiner wrote a report dated May 19th, 1996 and stated that claimant medically needed nothing *827 further, but he was not the treating physician and had only seen the claimant twice. The defendant should have restored claimant's weekly compensation benefits and agreed to pay for the outpatient surgery recommended by the treating doctor. From the time claimant's compensation was cut off the defendant knew that claimant was still suffering from her injuries as the medical reports indicated. In failing to pay claimant's weekly compensation and authorize the outpatient surgery recommended, the defendant has acted in an arbitrary and capricious manner and must pay claimant penalties in accordance with the statute.... [Footnote omitted.]
Initially, we note that the standard for determining the propriety of penalties was also changed in 1983 so that penalties were not collectable "[w]henever the employee's right to such benefits has been reasonably controverted by the employer or his insurer." In addition to this language, in 1989, the following language was added allowing penalties: "unless such nonpayment results from conditions over which the employer or insurer had no control." La. Acts 1989, No. 24, § 1. These two provisions have been retained in La. R.S. 23:1201 through the present date.[11] Consequently, the "arbitrary and capricious" standard no longer applies to an award of penalties in a workers' compensation matter. Therefore, when payment is not made in accordance with La. R.S. 23:1201, penalties are imposed unless the employer or its insurer has "reasonably controverted" the compensation claim[12] or unless "such nonpayment results from conditions over which the employer or insurer had no control." Whether the refusal to pay benefits warrants the imposition of penalties is a factual question which will not be disturbed on appeal in the absence of manifest error. Johnson v. Vinson Guard Service, Inc., 92-2187, p. 3 (La.App. 1st Cir. 3/11/94) 636 So.2d 914, 916, writ not considered, 94-1661 (La.9/2/94) 642 So.2d 1280. Where the trial court commits legal error by applying the incorrect legal standard or principle, this court is required to determine the facts de novo from the entire record and render a decision on the merits. Johnson v. Vinson Guard Service, Inc., 92-2187 at pp. 3-4, 636 So.2d at 916.
This court in Hall v. McDonald Insulation, 537 So.2d 328, 332-333 (La.App. 1st Cir.1988), adopted the following analysis for determining whether an employer or insurer has reasonably controverted an employee's right to workers' compensation benefits:
[G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. This test requires a close analysis of each workers' compensation case.
See also Watson v. Amite Milling Co., 560 So.2d 902, 906 (La.App. 1st Cir.), writ denied, 567 So.2d 614 (La.1990); Thomas v. Ramsey's Trailways, Inc., 618 So.2d 667, 672 (La.App. 2d Cir.), writ denied, 626 So.2d 1174 (La.1993). Penalties are stricti juris and should be imposed only when the facts clearly negate good faith and just cause in refusing to pay. Thomas, 618 So.2d at 672.
After review, we find the record herein does not support a finding that plaintiff's right to compensation benefits had been reasonably controverted. The only independent medical examination which was performed at appellant's request was undertaken by Dr. Robert A. Steiner, who issued a report on May 19, 1995. Therein, Dr. Steiner opined that plaintiff's "subjective complaints are out of proportion to the objective physical findings noted on her examination and out of proportion to the pathology that was dealt with at the time of her arthroscopy." Dr. *828 Steiner concluded that plaintiff should be able to return to work and recommended no further treatment. This report does not constitute "sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant," as contemplated by La. R.S. 23:1201 and Hall v. McDonald Insulation, 537 So.2d at 332-333. Dr. Steiner's report did not even address Dr. Hontas' recommendations for light duty or the physical restrictions imposed on plaintiff. Furthermore, Dr. Hontas' suggestion of a second surgery was not made until September of 1995, after Dr. Steiner's evaluation of plaintiff.
Appellant's defense against the imposition of penalties, as presented in brief to this court, centers around an attempt to cast blame on its insurer for termination of benefits, an argument more appropriately directed toward the discretion of the WCHO provided in La. R.S. 23:1201 to cast penalties on either the employer or the insurer "depending upon fault." While Gaylord's employee, Bryan Freeman, testified that the decision to terminate plaintiff's workers' compensation benefits was made by the insurer, CNA, it is apparent that Gaylord's position on plaintiff's ability to work was the motivating factor in that decision. In fact, in its "Notice" of termination of compensation payments, forwarded to the Office of Workers' Compensation by CNA (Exhibit CX-11), CNA indicated compensation payments were stopped because "Employee has returned to work with wage equal to or greater than pre-injury wage." Thus, it is evident that the sole basis for discontinuation of plaintiff's benefits was Gaylord's view that it had provided light duty work to plaintiff which she was physically capable of doing. However, the record reflects that the light duty job Gaylord provided did not adequately afford plaintiff the periods of rest outlined in the restrictions imposed by her physician.
Therefore, we find appellant/defendant did not reasonably controvert plaintiff's right to compensation benefits and that appellant/defendant was at fault in causing the failure to pay benefits. Accordingly, we award penalties against appellant/defendant on the amount of unpaid workers' compensation benefits owed to plaintiff in accordance with La. R.S. 23:1201.
Appellant/defendant further contends that penalties are not warranted for failure to approve the most recent operation offered to plaintiff by Dr. Hontas. Appellant/defendant states in brief to this court, "Neither Defendant nor its insurer have ever refused the requested surgical procedure recommended by Dr. Roch Hontas." Gaylord contends that plaintiff made no election to undergo or request for approval of this proposed surgery, referring to a letter from plaintiff's counsel to defendant's counsel in January of 1996, stating: "If no such [settlement] offer is forthcoming by the end of the month, I suggest you communicate this to me in writing, and then take action to approve Ms. Spencer's needed surgery." (Defendant's Exhibit 1.) However, plaintiff testified before the WCHO that she wants to have the surgery and has been unable to do so because, "[t]he doctor said he's waiting on approval." On September 22, 1995, Dr. Hontas directed a report to CNA stating the following:
Ms. Spencer has had a protracted course post-operatively. She appears to have a symptomatic plica that has been nonresponsive to anti-inflammatory medicines and the local corticosteroid injection that I gave her last month. The only other option that I could offer Ms. Spencer is to arthroscopically debride the plica. This has a reasonable chance of success but I would only schedule this procedure with your approval. No new medicines were prescribed today. I have asked Ms. Spencer to check with us in the office in one month. If you wish us to proceed with an arthroscopic excision of the plica, please let this office know and we would schedule it as soon as possible.
In subsequent letters of October 20, 1995, December 8, 1995, January 29, 1996, and March 14, 1996, Dr. Hontas reiterated his opinion that the only treatment option available to plaintiff was the arthroscopic surgery, that the surgery could not be scheduled without CNA's approval and that if approval was forthcoming, and, with the exception of the *829 last letter, that the surgery would be scheduled at the earliest possible time.
We must then determine whether these circumstances constitute a demand on Gaylord for payment of the proposed surgery, in order for Gaylord's failure to respond to be subject to penalties. In Garner v. Sheats & Frazier, 95-39, p. 8 (La.App. 3d Cir. 7/5/95) 663 So.2d 57, 62, the claimant's doctor reported to the employer that if the claimant were unable to perform on his job, the claimant would need to be "orthoscopically [sic]" examined. The Garner court found that even though the plaintiff testified that he was unable to work at his previous job, no evidence was presented to show this fact had been communicated to the employer or that demand had been made for authorization of additional testing. 95-39 at p. 8, 663 So.2d at 62. In Anderson v. Biedenharn Bottling Group, 95-646, p. 10 (La.App. 3d Cir. 11/2/95) 664 So.2d 588, the court found that no demand was made to the defendant for medical treatment or for payment of medical expenses, stating that the doctor's suggestion that an arthroscopy may be required did not rise to the level of a demand for treatment. Further, the defendant's testimony that he was told his claims adjuster had refused to authorize treatment is insufficient to prove that the defendant improperly refused medical treatment. 95-646 at p. 11, 664 So.2d at 594.
In the instant case, while the communications of plaintiff's physician, taken alone, may not have been sufficient to notify Gaylord of plaintiff's desire to obtain approval for the arthroscopic surgery, the letter by plaintiff's attorney on January 11, 1996, provided the additional step necessary to constitute a demand on defendant. On the day of the hearing, March 24, 1996, slightly more than sixty days had passed since demand was made on Gaylord, with no authorization for the surgery having been made. Therefore, Gaylord is liable for penalties for failure to pay for the arthroscopic procedure in accordance with La. R.S. 23:1201.

INTEREST

Assignment of Error (5)
Lastly, appellant asserts the WCHO awarded prejudgment interest contrary to La. R.S. 23:1201.3. The WCHO decision orders appellant/defendant to pay to plaintiff "penalties, interest and attorney's fees in the amount of Four Thousand Dollars in accordance with the statute." (Emphasis added.) The WCHO's written reasons state appellant/defendant "must pay claimant penalties in accordance with the statute and attorney's fees in the amount of Four Thousand Dollars.... [t]here will be judgment [sic] herein in favor of claimant and against defendant ordering the defendant to pay ... penalties, interest, and attorney's fee [sic] in the amount of Four Thousand Dollars." Though not clearly expressed in its decision, we believe the WCHO intended to award penalties and interest as authorized by statute and attorney's fees in the amount of four thousand dollars.
The pertinent statute, La. R.S. 23:1201.3, provides, "Any compensation awarded and all payments thereof directed to be made by order of the hearing officer shall bear judicial interest from the date ordered paid by the hearing officer until the date of satisfaction." (Emphasis added.) In Hammons v. ABB C-E Services, Inc., 94-2444, pp. 7-8 (La.App. 1st Cir. 10/6/95) 671 So.2d 370, 375, this court, in an en banc decision, amended an award of legal interest from date of judicial demand until paid to comply with La. R.S. 23:1201.3, holding that interest could run only from the date the hearing officer awarded workers' compensation benefits. It does not appear from a reading of that opinion, however, that an award of interest was made with respect to penalties imposed therein. And in Henderson v. New Medico Associates, Inc., 95-0488 at p. 10, 667 So.2d at p. 1100, a three-judge panel of this court through Judge Fogg, who was also the voice of the court in Hammons, held that, "Interest on penalties is allowed from the date of judicial demand." (Emphasis added.) Therefore, we are compelled to amend the WCHO decision to award judicial interest on the compensation benefits awarded from the date ordered paid, April 3, 1996, until the date of satisfaction, in accordance with La. R.S. 23:1201.3, and judicial interest on the *830 penalties awarded from date of judicial demand, August 28, 1995.
For the reasons stated herein, the decision of the Office of Workers' Compensation ordering appellant/defendant to pay "claimant her weekly worker's [sic] compensation payments from the date that they were cut off to the present and into the future until her conditions change" is hereby AMENDED to award plaintiff supplemental earnings benefits in accordance with La. R.S. 23:1221(3); the WCHO order to appellant/defendant "to continue paying claimant's medical cost[s]" is hereby REVERSED; and, the award of attorney's fees to plaintiff is REVERSED. Furthermore, the decision of the Office of Workers' Compensation is AMENDED to award plaintiff: penalties on the amount of the previously unauthorized arthroscopic procedure and on all unpaid workers' compensation benefits in accordance with La. R.S. 23:1201; interest on the amount of the unpaid compensation benefits at the judicial rate from April 3, 1996, until the date of satisfaction; and, interest on the amount of penalties imposed from the date of judicial demand, August 28, 1995. In all other respects, the decision of the Office of Workers' Compensation is AFFIRMED; all costs of this appeal are to be borne by appellant/ defendant, Gaylord Container Corporation.

ON REHEARING
PER CURIAM.
In the original opinion, the decision of the Office of Workers' Compensation was "amended to award plaintiff supplemental earnings benefits in accordance with La.R.S. 23:1221(3)[.]" Although the award of supplemental earnings benefits remains unchanged, we REMAND this case to the Office of Workers' Compensation for a determination of what supplemental earnings benefits are due from March 1995 forward.
In all other respects, rehearing is DENIED.
NOTES
[2] A Workers' Compensation Hearing Officer is not a "judge," but rather a hearing officer, who presides over a "tribunal," not a "court," and can render an "order, decision or award," not a "judgment." Walker v. ConAgra Food Services, 28,205, p. 1 (La.App.2d Cir. 4/3/96) 671 So.2d 1218, 1219.
[3] Supplemental earnings benefits are calculated as sixty-six and two-thirds percent of the difference between the average monthly wages at the time of injury and the average monthly wages the employee is able to earn in any month thereafter. La. R.S. 23:1221(3). Where the employer fails to prove that the employee was offered a job or one was available to her which she was physically capable of performing, the amount of wages the employee is able to earn is considered as zero. Rachal v. Crown Store Equipment Co., 93-1602 at pp. 3-4, 640 So.2d at 732.
[4] The court in Mullins v. Courtney Equipment, 95-989, p. 6 (La.App. 3rd Cir. 1/31/96) 670 So.2d 329, 333-334, indicated that supplemental earnings benefits continue until the employer can prove there is work available which the defendant has refused. However, if the defendant is physically capable of performing the work, only a credit against the amount of compensation owed would be available. Such a credit might not be sufficient to completely offset the sixty-six and two-thirds percent of pre-accident wages.
[5] Prevost and Woolsey hold that supplemental earnings benefits cannot be awarded for the statutory maximum of 520 weeks because under certain conditions, benefits may be terminated sooner than 520 weeks.
[6] We note Augustus v. St. Mary Parish School Board, 95-2498, p. 15 (La.App. 1st Cir. 6/28/96) 676 So.2d 1144, 1155, states, "A plaintiff may ordinarily recover reasonable medical expenses, past and future, which she incurs as a result of her injury." (Emphasis added.) However, the court in Augustus actually allowed recovery of past medical expenses only; thus, the reference to future medical expenses was purely dicta. Moreover, the cases cited therein in support of the stated proposition were tort cases not dealing with workers' compensation law.
[7] The workers' compensation statute applicable to a particular injured worker is the one in effect on the date of the injury. Johnson v. Fidelity & Casualty Insurance Company of New York, 618 So.2d 651, 654 (La.App. 2d Cir.1993). See also Daugherty v. Domino's Pizza, 95-1394, p. 6 (La.5/21/96) 674 So.2d 947, 951; Miles v. F.D. Shay Contractor, Inc., 626 So.2d 74, 77 (La.App. 3d Cir.1993).
[8] La. R.S. 23:1201(E.) was redesignated as 23:1201(F.) and amended by La. Acts, 1995, No. 1137, § 1, effective June 29, 1995, and currently states:

Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the hearing officer determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
[9] La. R.S. 23:1201.2 was amended by La. Acts. 1995, No. 1137, § 1, effective June 29, 1995, and currently states:

Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions of R.S. 22:658(C) shall be applicable to claims arising under this Chapter.
[10] We find no merit in plaintiff's argument that Gaylord failed to prove insurance coverage. Gaylord's employee, Bryan Freeman, testified that Gaylord was fully insured for its workers' compensation obligations by CNA. Moreover, plaintiff's testimony was indicative of her belief that CNA was Gaylord's workers' compensation insurer. Additionally, a "Notice" of termination of compensation payments was forwarded to the Office of Workers' Compensation by CNA, a copy of which was introduced as Exhibit CX-11 at the hearing of this matter.
[11] The standard for the imposition of penalties in a workers' compensation matter as stated in La. R.S. 23:1201 is in contrast to the standard for the imposition of attorney's fees as dictated by La. R.S. 23:1201.2, which requires the employer or insurer to be found "arbitrary, capricious, or without probable cause" in terminating benefits.
[12] Henderson v. New Medico Associates, Inc., 95-0488 at p. 9, 667 So.2d at 1099.