STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-1075


COREY LAMARTINIERE

VERSUS

BOISE CASCADE CORPORATION


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2
PARISH OF RAPIDES, NO. 07-07255
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of J. David Painter, Phyllis M. Keaty, and John E. Conery, Judges.


REVERSED IN PART AND AFFIRMED IN PART.

Eugene A. Ledet, Jr.
Dalrymple & Ledet, LLC
Post Office Drawer 14440
Alexandria, Louisiana 71315
(318) 442-1818
Counsel for Plaintiff/Appellee:
     Corey Lamartiniere

**Charles W. Farr**
**Attorney at Law**
**1305 W. Causeway Approach, Suite 213**
**Mandeville, Louisiana  70471**
**(985) 626-3821**
**Counsel for Defendant/Appellant:**
      **Boise Cascade Corporation**

**KEATY, Judge.**

Employer appeals from a judgment rendered by the workers' compensation judge (WCJ) denying its fraud defense and reinstating Claimant's temporary total disability benefits (TTDs) from the date of his termination, awarding him out-of-pocket medical expenses, mileage expenses, continuing medical care, and change of pain management physician. We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

Claimant, Corey Lamartiniere, injured his lumbar spine on June 5, 2007, while picking up a twelve-foot long half-inch steel pipe while in the course and scope of his employment with Boise Cascade Corporation. On February 12, 2009, Dr. Troy Vaughn performed a two-level lumbar-disc fusion on Claimant. Boise paid workers' compensation benefits to Claimant until December 20, 2011, when it discontinued all benefits based upon its belief that Claimant had violated La.R.S. 23:1208.[1]

Trial was held on May 16, 2013. Although two different attorneys had represented Claimant in conjunction with his claim, Claimant was unrepresented at the time of trial.[2] In oral reasons for judgment rendered on July 2, 2013, the WCJ found that Boise failed to prove that Claimant violated the fraud statute. The WCJ determined that Claimant established by clear and convincing evidence that he remained temporarily totally disabled and reinstated his TTDs in the amount of $478.00 per week from December 20, 2011, the date they were terminated. Claimant was awarded $1,753.79 in out-of-pocket medical expenses and $613.44 in mileage expenses. In addition, Boise was ordered to reinstate Claimant's

---

[1] Hereafter, this opinion will refer to La.R.S. 23:1208 as the fraud statute.

[2] Claimant is now represented by counsel who has filed an appellee brief on his behalf.

continuing medical care and to allow Claimant to change his pain management physician. Written judgment was signed on July 10, 2013.

Boise now appeals, alleging that the WCJ erred: 1) in allowing the introduction of non-certified medical records into evidence; 2) in awarding Claimant TTD benefits; 3) in finding that Claimant did not violate the fraud statute and forfeit his right to benefits by lying about his use of cocaine; 4) in finding that Claimant did not violate the fraud statute by making false statements concerning his ability to work; and 5) in awarding Claimant a change of pain management physician.

**DISCUSSION**

Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't of Corrections,* 93-1305 (La.2/28/94); 633 So.2d 129. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State,* 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1112 (La.1990).

*Foster v. Rabalais Masonry, Inc.*, 01-1394, pp. 2-3 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784.

*Testimony and Evidence Presented at Trial*[3]

Before the presentation of evidence, the parties stipulated that Claimant was employed by Boise at the time of his June 5, 2007 accident and his average weekly

---

[3] Some of the evidence offered by Claimant and Boise, including documents concerning Claimant's claims for reimbursement of out-of-pocket medical and mileage expenses, is not relevant to this appeal and will not be discussed herein.

wage was $1,267.00, with a corresponding compensation rate of $478.00 per week. They further stipulated that Boise is self-insured and that it terminated Claimant's benefits on December 20, 2011.

Claimant's testimony focused on Boise's failure to authorize and pay for his past medical treatment and its failure to reimburse him for the mileage expenses he incurred in seeking medical treatment and in filling his prescriptions. On cross-examination, Boise's attorney questioned Claimant about whether he had worked at Strother's Country Store (Strother's or the store) in Pitkin, Louisiana, beginning in May or June 2011. Claimant denied working at Strother's, although he admitted that he had priced and stocked merchandise, served food to customers, taken out the trash, and stocked bags of ice into the cooler in front of the store. He explained that he had been engaged to the store owner's daughter at the time and that he would often visit the store just "killing time." Boise's attorney then questioned Claimant about a drug screen that tested positive for cocaine during his treatment with Dr. Michael Dole, his former pain management physician. Claimant denied using cocaine and surmised that his urine sample may have gotten mixed up with someone else's as there were five other samples next to his when he turned it in.

Thereafter, Claimant called Lamar Strother, the owner of Strother's, and Claimant's step-mother, Linda Lamartiniere, as witnesses. Mr. Strother stated that when Claimant was engaged to his daughter, he would come by the store several days a week to help and learn more about the business, but he was never paid and there was no set time that he would be there. On cross-examination, Mr. Strother stated that Claimant performed the same duties and had the same responsibilities as his regular employees. Upon questioning by the WCJ, Mr. Strother stated that when Claimant visited the store, he stayed there between one and four hours.

3

Ms. Lamartiniere testified that Claimant became depressed and had to depend on his family for help after Boise stopped paying him benefits.

Before resting his case, Claimant offered into evidence records from three of his treating physicians: Dr. Vaughn, the neurosurgeon who performed his back surgery; Dr. Peter Milder, a family medicine physician; and Dr. James Quillin, a clinical psychologist and psychiatrist. He also offered into evidence the results of a private drug test that he took on February 10, 2010, and a December 19, 2011 email from his former attorney's office to Boise's attorney inquiring whether Boise had approved a nerve stimulator recommended by Dr. Vaughn. After noting that Boise objected to the medical records[4] not being properly certified, to the relevance of Claimant's private drug test because of when it was conducted in relation to the test administered by Dr. Dole, and to the admission of Dr. Milder's records since he was not listed on Claimant's pre-trial statement, the WCJ admitted Claimant's exhibits into evidence.

Claimant's exhibits reveal that he was still treating with Drs. Vaughn, Milder, and Quillin when this matter was tried in May 2013. At Claimant's April 8, 2013 visit, Dr. Vaughn noted that Claimant had "failed back syndrome with chronic back and bilateral lower extremity radicular pain" but that an updated MRI showed "no significant impingement of the lumbar spine." Dr. Vaughn continued his earlier recommendation that Claimant be evaluated for a spinal cord stimulator. Claimant's chief complaints to Dr. Milder at his May 13, 2013 visit were back pain, neuritis, radiculitis, osteoarthritis, and impotence. At Claimant's April 26, 2013

_____

[4] At trial, Boise objected to all three of those exhibits. On appeal, however, Boise only objects to Dr. Vaughn's records.

4

appointment, Dr. Quillin found him to be suffering from major depression, paranoia, and insomnia.

Boise's first witness was Dr. Richard Bunch, who was accepted as an expert in the fields of physical therapy, neurophysiology, ergonomics, and in conducting Functional Capacity Evaluations (FCEs). Dr. Bunch testified that Claimant completed an FCE at his office on August 2, 2011. The FCE report was admitted into evidence without objection. During the intake interview, Claimant told Dr. Bunch that he was not working at the time and that he did not feel able to return to his prior job. When Dr. Bunch asked if he thought he "was able to return to any type of work at this time," Claimant replied, "I'm not sure. I haven't explored." According to Dr. Bunch, Claimant gave a valid effort and "did not appear to over report the severity of his pain during th[e] FCE." Dr. Bunch noted that although Claimant reported moderate pain before and during the FCE, Claimant completed a pain diagram after completion of the FCE that showed that his pain was less than before or during the FCE. After comparing Claimant's "residual functional capacities" to the job demands of a Production Tech 5 Bundle Saw Operator, the job Claimant performed at Boise before he was injured, Dr. Bunch opined that Claimant was capable of returning to his previous position. In other words, the results of the FCE showed that Claimant could safely perform at the light-medium level, which is how Dr. Bunch classified Claimant's his former job at Boise according to the physical demand levels established by the U.S. Department of Labor. Nevertheless, based on the responses Claimant gave during his intake interview, Dr. Bunch believed that Claimant was not motivated to return to work at Boise.

Boise's final witness was Craig Latiolais, a licensed private investigator, who testified that he was hired by Boise to conduct surveillance of Claimant. On August 29, 2011, Mr. Latiolais observed Claimant at Strother's, wearing a shirt with the store's insignia on it, sorting and unpacking merchandise, affixing price labels on items, and placing items out for sale on the store's shelves. Mr. Latiolais next observed Claimant at Strother's on September 12, 2011, preparing biscuits and loading trash and cardboard into a dumpster behind the store. Finally, Mr. Latiolais observed Claimant at Strother's on September 19, 2011, pulling a wagon filled with seventeen bags of ice and loading them into a freezer, a task which he repeated with seventeen more bags of ice. Later that day, Mr. Latiolais saw Claimant standing on a ladder in the kitchen changing light bulbs. In conjunction with Mr. Latiolais' testimony, Boise played three DVDs containing surveillance that he obtained on the three dates that he observed Claimant at Strother's. The three DVDs were each admitted into evidence after being shown. Upon questioning by Claimant and the WCJ, Mr. Latiolais explained that he was unsure as to what a FCE was and that he was not given any information by Boise as to what kind of injury Claimant had or what type of restrictions or limitations had been placed on him by his doctors.

At the close of its case, Boise offered into evidence Dr. Dole's August 24, 2012 deposition and his records concerning Claimant, which were admitted into evidence without opposition. In his deposition, Dr. Dole testified that he began treating Claimant in September 2007. Dr. Dole stated that he requires all of his new patients to sign a Patient Opiod (Narcotic) Treatment Agreement (Agreement) that explains the rules they are expected to follow. Claimant signed five such Agreements while under Dr. Dole's care. Therein, Claimant agreed to take pain

6

medications only as prescribed by Dr. Dole and to not accept any controlled medications from another physician or individual. Dr. Dole explained that Louisiana law required him to perform routine urine drug testing of his patients at least four times per year. Claimant's first drug test in July 2009 showed the presence of Soma, a muscle relaxer that Dr. Dole had stopped prescribing to him three months prior. At Claimant's next visit, Dr. Dole told him to discard any of his leftover Soma. Dr. Dole then reviewed the Agreement with Claimant and reiterated that he should not take any controlled substances other than those currently being prescribed by Dr. Dole. Claimant was administered another drug test on December 16, 2009, and the results came back positive for cocaine. Dr. Dole sent the urine sample for a confirmatory test,[5] which confirmed the presence of cocaine in Claimant's system. When Dr. Dole confronted Claimant with the results, he denied having used cocaine. As a result, Dr. Dole began to wean him off of pain medications and to release him to the care of Dr. Vaughn. On January 13, 2010, Dr. Dole discharged Claimant as a patient for violating the Agreements that he had signed.

### *The Fraud Statute*

We will address Boise's contention that the WCJ erred in denying its fraud defense before considering its remaining assignments of error as those assignments would become moot if we find merit to Boise's argument.

Louisiana Revised Statutes 23:1208(A) provides that it is "unlawful for any person, for the purpose of obtaining . . . any benefit or payment . . . to willfully make a false statement or representation." "Any employee violating this Section

---

[5] Dr. Dole referred to the confirmatory test, liquid chromatography-mass spectrometry (LC-MS), as the "gold standard" in drug testing.

shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter." La.R.S. 23:1208(E).

> In order for there to be a forfeiture of workers' compensation benefits under La.R.S. 23:1208, the employer must prove (1) the claimant made a false statement or representation, (2) that the statement was willfully made, and (3) the statement was made for the purpose of obtaining or defeating any benefit or payment. *Resweber v. Haroil Constr. Co.,* 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7; *Babineaux v. Moss Motors,* 06-749 (La.App. 3 Cir. 12/6/06), 944 So.2d 882. However, the mere making of inadvertent or inconsequential false statements will not result in forfeiture.

*Rougeou v. St. Francis Cabrini Hosp.*, 12-854, p. 5 (La.App. 3 Cir. 2/6/13), 107 So.3d 851, 856.

Boise claims that the WCJ erred in finding that Claimant did not violate the fraud statute and forfeit his right to benefits by lying to Dr. Dole about his use of cocaine and by making false statements to Dr. Bunch during the FCE regarding his ability to return to work.

In its oral reasons for judgment, the WCJ found Claimant to be credible and believable. The WCJ then noted that forfeiture of benefits is a harsh penalty, and Boise had failed to prove its fraud defense. With regard to Claimant's alleged use of cocaine, the WCJ stated that he did not consider the negative results of the private drug test because it was administered too long after the test administered by Dr. Dole. The WCJ further noted that Claimant denied using cocaine when confronted by Dr. Dole and again when testifying at trial, and that whether Claimant had actually used cocaine was inconsequential as his medical records demonstrated that he was still in need of palliative care and pain management. The WCJ determined Claimant's statements to Dr. Bunch that he was not working were also inconsequential given the fact that Dr. Bunch believed that Claimant had put forth "a full, genuine, valid effort into performing the FCE." The WCJ believed

Claimant's explanation that he was spending time at Strother's in the hope of seeing his then fiancé and that he never got paid for the tasks he performed while there. Finally, the WCJ stated that the surveillance taken by Mr. Latiolais did not show Claimant "doing anything greatly strenuous."

Given the aforementioned testimony and the WCJ's determination that Claimant was a credible witness, we find no manifest error in the WCJ's finding that Boise failed to meet its burden of proving fraud sufficient to deprive Claimant of further workers' compensation benefits.

## Medical Records

Boise complains that the WC erred in allowing into evidence Claimant's medical records from his neurosurgeon, Dr. Vaughn, because those records were not certified and, thus, did not comply with the dictates of La. Admin. Code tit. 40, Pt. 1, § 6209. In allowing the records into evidence, the WCJ stated that he "believe[d] that they carry sufficient weight under the lax rules" of evidence applicable to workers' compensation proceedings.

In *Brown v. A M Logging*, 10-1440, p. 9 (La.App. 1 Cir. 8/4/11), 76 So.3d 486, 492, the first circuit held that the WCJ "has the discretion to admit evidence that would otherwise be inadmissible under the Louisiana Code of Evidence." Under the circumstances present here, we find no abuse of discretion in the WCJ's decision to admit Dr. Vaughn's records into evidence.

## Temporary Total Disability Benefits

In order to prove his entitlement to TTDs, Claimant had to prove "by clear and convincing evidence, unaided by any presumption of disability, that [he] is physically unable to engage in any employment or self-employment, regardless of

the nature or character of the employment or self-employment, including . . . employment while working in any pain." La.R.S. 23:1221(1)(c).

> The clear and convincing standard is a heavier burden of proof than the usual civil preponderance of the evidence standard but less burdensome than the beyond a reasonable doubt standard of criminal law. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable; that is, much more probable than its nonexistence.

*Johnson v. Temple-Inland*, 95-948, pp. 6-7 (La.App. 3 Cir. 1/31/96), 670 So.2d 388, 392 (citation omitted), *writ denied,* 96-544 (La. 4/19/96), 671 So.2d 919.

"An employee is not entitled to collect either temporary total disability or permanent total disability when he is physically able to engage in any employment." *Hilts v. Wal-Mart Stores, Inc.*, 02-1440, p. 3 (La.App. 3 Cir. 4/2/03), 842 So.2d 465, 468-69, *writ denied,* 03-1258 (La. 9/5/03), 852 So.2d 1036 (quoting *Spencer v. Gaylord Container Corp.,* 96-1230, p. 5 (La.App. 1 Cir. 3/27/97), 693 So.2d 818, 822).

In *Odom v. Kinder Nursing Home*, 06-1442, p. 5 (La.App. 3 Cir. 4/25/07), 956 So.2d 128, 132, this court noted:

> "The issue of disability within the framework of the workers' compensation law is a legal rather than a purely medical determination. *LeBlanc [v. Grand Isle Shipyard, Inc.*, 95-2452 (La.App. 1 Cir. 6/28/96)], 676 So.2d [1157,] 1161. The issue of disability is determined with reference to the totality of the evidence, including both lay and medical testimony. *LeBlanc*, 676 So.2d at 1161." *Walker v. High Tech Refractory Servs., Inc.*, 03-1621, p. 4 (La.App. 1 Cir. 6/25/04), 885 So.2d 1185, 1188.

Boise contends that the WCJ erred in awarding Claimant TTDs because he failed to prove that he was not capable of working. Pointing to Dr. Bunch's testimony and the results of the FCE, Boise contends that it proved that Claimant was capable of returning to his previous job at Boise. Boise further submits that

10

Claimant's ability to work was verified by testimony and surveillance video which showed Claimant "working" at Strother's during the second half of 2011.

Without citing any jurisprudence, Claimant counters that the FCE results are useless because the FCE was not prescribed by nor were the results thereof confirmed by one of his treating physicians. In addition, Claimant complains that no job descriptions, including that of his previous position at Boise or a store clerk, were submitted to Dr. Vaughn for approval. Finally, Claimant points to a February 14, 2012 medical report of Kevin Murphy, Dr. Vaughn's physician assistant, which noted that Claimant was "not able to work" at that time. Alternatively, in the event this court finds that Claimant is no longer entitled to TTDs, he asks this court to award him supplemental earnings benefits (SEBs).

In finding that Claimant had met his burden of proving his continued entitlement to TTDs, the WCJ noted that Dr. Vaughn believed that Claimant had failed back syndrome, with ongoing bilateral radiculopathy in his lower legs, and that Drs. Vaughn and Milder wanted Claimant to undergo an additional MRI. The WCJ further found that Boise's effort to terminate Claimant's benefits was inadequate because it had not provide Claimant with any 1020 income reporting forms or a 1025 certificate of compliance.[6]

After having completed a thorough review of the evidence and exhibits submitted at trial, we conclude that the WCJ committed manifest error in finding that Claimant met his burden of proving his entitlement to TTDs. Claimant failed to offer any testimony regarding his current level of pain or his current ability/inability to work at the May 16, 2013 trial of this matter. On the other hand,

---

[6] The purpose of Form 1025 is to inform an employee that "it is unlawful to work and receive workers's compensation indemnity disability" and that they "must notify [their] employer or insurer of the earning of any wages." See La. Admin. Code tit. 40, Pt. 1, § 6659.

through the results of the FCE; the testimonies of Dr. Bunch, Mr. Strother, and Mr. Latiolais; and the surveillance videos, particularly the one showing Claimant loading thirty-four bags of ice into the cooler at Strother's, Boise rebutted the evidence in the medical records indicating that Claimant was unable to engage in any employment. Thereafter, Claimant failed to offer any additional evidence to show his current inability to work. When confronted with the evidence of his activities at Strother's, Claimant did not deny participating in those activities. While the February 14, 2012 report from Dr. Vaughn's office stated that Claimant was unable to work, none of the more recent reports note such inability to work. Instead, the reports simply note that Claimant has not resumed working. More importantly, according to a May 10, 2013 note from Dr. Vaughn, an updated MRI of Claimant's lumbar spine was performed on April 3, 2013, and showed "no significant impingement" nor "any impingement which would be expected to be causing [the] described radicular symptoms." Thus, it appears that the need for an additional MRI as noted by the WCJ no longer exists. We find no merit to Claimant's argument that the FCE had to be ordered or reviewed by one of his physicians to be valid or that Boise had to get his physician's approval of any jobs to defeat his claim to entitlement of TTDs. To the contrary, the burden on an employer to prove that an employee can perform a certain job only arises when the employee has met his initial burden of proving his entitlement to SEBs due to a disability that prevents him from earning at least ninety percent of his pre-injury wages. *See Dubuisson v. Amclyde Engineered Prods., Co., Inc.*, 12-10 (La.App. 1 Cir. 12/31/12), 112 So.3d 891. Likewise, the WCJ was mistaken in his belief that Boise's failure to supply Claimant with a 1020 income reporting forms or a 1025

certificate of compliance somehow relieved Claimant of the burden of proving that he was unable to work.

Given the totality of the evidence, we conclude that the WCJ committed manifest error in finding that Claimant proved his current entitlement to TTDs by clear and convincing evidence, a burden which required Claimant to prove by more than a preponderance of the evidence that he was physically unable to engage in any employment. Thus, Boise does not owe Claimant TTDs beyond May 16, 2013, the date this matter was tried. Because Boise has not technically challenged the portion of the judgment reinstating Claimant's right to recover TTDs between the date they were terminated, December 20, 2011, and the date of trial, that portion of the judgment is not affected by our finding and will be affirmed. Finally, because Claimant did not answer Boise's appeal, we cannot grant the request in his appellee brief that he be awarded SEBs "because to do so would result in a modification in favor of the non-appealing [party], contrary to Louisiana law. La.CCP art. 2133." *Matthews v. Consol. Cos., Inc.*, 95-1925, p. 1 (La. 12/8/95), 664 So.2d 1191, 1191.

### *Change of Pain Management Physician*

Louisiana Revised Statutes 23:1121(B)(1) provides that an injured employee:

> shall have the right to select one treating physician in any field or specialty. . . . After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.

Claimant initially selected Dr. Dole as his pain management doctor. In his deposition, Dr. Dole stated that Claimant was at maximum medical improvement from a pain management standpoint when he discharged Claimant as a patient.

13

Boise claims that, under the circumstances, the WCJ erred in allowing Claimant to change his pain management physician. In support of its argument, Boise relies on *Reed v. St. Francis Medical Center.*, 44,211, p. 7 (La.App. 2 Cir. 4/8/09), 8 So.3d 824, 829, wherein the second circuit, in interpreting La.R.S. 23:1121(B)(1), noted that "the statute does not invest the claimant with the right to multiple treating physicians." Moreover, "the claimant must show that a choice of a new treating physician is medically necessary." *Id.* Boise submits that Claimant's "conscious decision to use illegal drugs and otherwise violate his Patient Agreement with Dr. Dole does not equate to medical necessity." Citing *Dubuisson*, 112 So.3d 891, Claimant counters that he should be entitled to a second choice of pain management physician because Dr. Dole refuses to treat him, regardless of whether or not he actually used an illegal drug.

Likening this case to *Dubuisson*, the WCJ awarded Claimant the right to change pain management physicians on the basis that Dr. Dole refused to treat him despite the fact that his medical records show that he is in need of further pain management.

In *Dubuisson,* the claimant's initial choice of pain management physician had prescribed Xanax to him but had discontinued the prescription. The evidence showed that sometime thereafter, the claimant had taken some of the leftover Xanax as well as some Valium that a friend had given him. As a result of his use of non-prescribed pain medication, the physician discharged the claimant as a patient. Soon after that discharge, the physician became seriously ill and was forced to close his practice. On appeal, the first circuit affirmed the WCJ's decision that the claimant was entitled to choose another pain management

14

physician on the grounds that "his initial choice in that specialty was no longer available." *Dubuisson*, 112 So.3d at 901.

Here, while Dr. Dole testified that Claimant had reached maximum medical improvement from a pain management standpoint when he was discharged on January 13, 2010, the note informing Claimant of that discharge stated that Claimant's "condition requires medical treatment" and that he should place himself "under the care of another physician without delay." Given the contradictory evidence concerning Claimant's need for continued pain management, the WCJ did not commit manifest error in concluding that Claimant proved that a new choice of pain management physician was medically necessary.

## DECREE

For the forgoing reasons, the portion of the judgment reinstating Claimant's right to receive TTDs beyond the May 16, 2013 date of trial is reversed. The judgment is affirmed in all other respects. Costs of this proceeding are assessed against Boise Cascade Corporation.

**REVERSED IN PART AND AFFIRMED IN PART.**