711 So.2d 297 (1998)
Ronnie WILEY, Plaintiff-Appellant,
v.
KENNETH PARKER LOGGING, Defendant-Appellee.
No. 97-1247.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1998.
Rehearing Denied May 19, 1998.
George Arthur Flournoy, Alexandria, for Ronnie Wiley.
Madeline Lee, Alexandria, for Kenneth Parker Logging.
Before DECUIR, AMY and PICKETT, JJ.
AMY, Judge.
The claimant, Ronnie Wiley, was allegedly injured while in the course and scope of his employment with the defendant, Kenneth Parker Logging. As a result of his injury, the claimant was paid workers' compensation *298 disability benefits and received related medical expenses. However, these benefits were terminated after the claimant was returned to work by his treating physician. The claimant filed suit asserting that he was improperly denied his choice of physician, that his benefits were wrongfully terminated, and that medical payments were either wrongfully denied or untimely paid. The Office of Workers' Compensation determined that the claimant neither proved his entitlement to benefits nor that medical expenses were improperly denied. The claimant now appeals. We affirm.

FACTS AND PROCEDURAL HISTORY
In this workers' compensation matter, the record indicates that the claimant, Ronnie Wiley, was injured on October 16, 1995, while in the course and scope of his employment with the defendant, Kenneth Parker Logging. The alleged injury occurred when the claimant was struck by a falling tree. Following the accident, the claimant sought medical care and was treated by Dr. Douglas Waldman, an orthopaedic surgeon. This care by Dr. Waldman was compensated by the defendant and, additionally, the claimant began receiving temporary total disability benefits due to his inability to work. Additionally, in April 1996, the claimant was also examined by a second orthopaedic surgeon, Dr. J. Thomas Kilroy, at the defendant's request.
After several months of treatment and benefits, the defendant sought to have the benefits terminated. Following a May 23, 1996 hearing, at which time a consent judgment was entered into, the parties agreed that the claimant was temporarily totally disabled and that such compensation and medical benefits were due until terminated by law. In an amended judgment, dated July 23, 1996, the workers' compensation judge found that the temporary total disability benefits agreed upon in the judgment could be modified in accordance with law, with or without court approval.
Following the May 1996 hearing and the consent judgment, the claimant continued to seek treatment from Dr. Waldman who opined that, as of August 1, 1996, the claimant should be able to return to work. After being so advised by Dr. Waldman, the claimant notified the employer that he wanted to exercise his choice of physician by being examined by another orthopaedic surgeon, Dr. Baer Rambach. This request, however, was denied. Additionally, the employer discontinued compensation benefits per Dr. Waldman's August 1, 1996 release date.
Despite the denial of the request for a change in physician, the claimant saw Dr. Rambach on August 1, 1996, the date he was scheduled to return to work. Dr. Rambach opined that, based upon his examination, and the claimant's complaints of pain, Wiley was unable to return to work. Accordingly, the claimant did not return to work until Dr. Rambach released him to work in October 1996.
The claimant filed a disputed claim for compensation on September 20, 1996 asserting that the employer had wrongfully terminated disability benefits and either failed to pay or untimely paid medical expenses. He additionally sought penalties and attorney's fees.
Following a hearing on April 4, 1997, the workers' compensation judge found in favor of the defendant after concluding that the claimant did not prove his entitlement to disability benefits, that he was not entitled to medical expenses incurred during Dr. Rambach's treatment, and that attorney's fees and penalties were not proper in this matter.
The claimant now appeals and asserts that the workers' compensation judge erred in denying his request for reinstatement of temporary total disability benefits. He also argues that the judge erred in denying medical expenses incurred while under Dr. Rambach's care. Additionally, he maintains that both penalties and attorney's fees should have been awarded due to the defendant's handling of the matter.

DISCUSSION

Disability Benefits
The claimant first maintains that the workers' compensation judge erred in denying his request for continued disability benefits. He *299 asserts that Dr. Waldman last saw the defendant in June 1996, at which time, he was still disabled as he had been throughout his treatment with Dr. Waldman. Additionally, Dr. Rambach opined that, beginning with his August 1, 1996 examination, the claimant continued to complain of pain and that his disability continued. Finally, the claimant asserts that the workers' compensation judge erred in failing to consider his testimony and that of his wife regarding the continuation of his pain and his inability to work.
In this matter, the claimant sought the continuation of temporary total disability benefits. However, such benefits are recoverable only after the employee proves, by clear and convincing evidence, that he is physically unable to perform any type of employment. La.R.S. 23:1221(1)(c).[1] In determining whether the claimant has met this burden, the workers' compensation judge must weigh both medical and lay evidence. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277 (La.1993). Furthermore, the claimant must introduce objective medical evidence to sustain this requirement by clear and convincing evidence. Comeaux v. Sam Broussard Trucking, 94-1631 (La.App. 3 Cir. 5/31/95); 657 So.2d 449.
In the present case, the workers' compensation judge concluded that the claimant did not introduce clear and convincing evidence of disability and explained as follows in written reasons for ruling:
Dr. Waldman returned claimant to work on August 1, 1996, without limitations or restrictions, after nine months of treatment and after performing an MRI, which revealed nothing significant. At least by the last visit with Dr. Waldman, there were no findings, other than some complaints of minimal tenderness. The claimant was also examined by another orthopaedic surgeon, Dr. J. Thomas Kilroy, at the employer's request. Dr. Kilroy found absolutely nothing wrong with the claimant and, in fact, found his complaints of pain to be inconsistent with any legitimate medical problem.
The medical opinion of Dr. Baer Rambach is given little credibility by this trier of fact. It is noted that Dr. Rambach disabled the claimant from work. However, Dr. Rambach did not report any objective findings in his initial medical evaluation.
Medical evidence substantiates the treating physician Dr. Waldman's opinion that the claimant could return to work on August 1, 1996. The claimant has failed to *300 prove by clear and convincing evidence that any disability existed after July 31, 1996.
The workers' compensation judge's determination regarding disability is a factual finding and will not be overturned in the absence of manifest error. Comeaux, 94-1631; 657 So.2d 449. We find no such error in this aspect of the judge's findings.
Like the workers' compensation judge, we note that Dr. Waldman was the claimant's treating physician and that he released him for work. At the date of Wiley's final appointment with Dr. Waldman on June 17, 1996, Dr. Waldman noted that the claimant continued to have subjective discomfort, but that he could bend well and he could come to full extension. Additionally, Dr. Waldman wanted to schedule an appointment with Wiley for four months subsequent to this June examination. Thus, at the time of his release to work on August 1, 1996, Dr. Waldman noted no objective medical evidence which would satisfy Wiley's burden of proof.
The defendant also presented the deposition of Dr. J. Thomas Kilroy, an orthopaedic surgeon, who examined the claimant in April 1996. He stated that his examination revealed inconsistencies in Wiley's complaints and, when asked if the results of his examination were what he would expect to find in someone without a back injury, Dr. Kilroy responded as follows: "Oh, I can say that his exam was so inconsistent and not reproducible and the cross testing were all negative that the exam really doesn't mean anything. It leads me to believe that more of his actions were contrived or reproduced by himself."
Neither do we find that Dr. Rambach's findings, alone, require the workers' compensation judge to conclude that the claimant had satisfied his burden. Dr. Rambach began seeing the claimant on the day he was released to return to work, August 1, 1996. Dr. Rambach's deposition testimony indicates that, after examination, he did not think that Wiley could return to work. He stated that his examination revealed generalized tenderness throughout the lumbar spine, and, further, a "reversal of the normal lumbar lordotic curve[.]" When questioned whether his examination revealed any objective findings, Dr. Rambach answered that "an objective abnormality was the reversal of the lordotic curve." He further stated that his other findings "were the responses of the patient to [his] examination and the history that [he] obtained from the patient." The finding related to the reversal of the lordotic curve is the only type of objective evidence presented during the hearing.
We do not find that the workers' compensation judge was manifestly erroneous in concluding that the claimant failed to meet his burden by clear and convincing evidence. Dr. Rambach provided the only medical evidence indicating that the claimant could not return to work. This evidence, combined with the lay testimony of the claimant and his wife, does not require that the workers' compensation judge conclude that Wiley was unable to perform all types of work. Further, this evidence was countered by the opinions of Dr. Waldman and Dr. Kilroy, opinions which were relied upon by the judge over the opinion of Dr. Rambach. Such credibility determinations are best left with the trier of fact. See Guillotte v. Dynamic Offshore Contractors, 628 So.2d 234 (La.App. 3 Cir.1993). We therefore find no error in the workers' compensation judge's factual determination.
Reasonableness of Dr. Rambach's Treatment
The claimant next maintains that the workers' compensation judge erred in concluding that Dr. Rambach's treatment was "unreasonable" and, therefore, not compensable. He asserts that the judge erred in failing to consider La.R.S. 23:1121 in conjunction with La.R.S. 23:1201(A).
An employee covered under workers' compensation has the right to choose "one treating physician in any field or specialty." La. R.S. 23:1121(B). After an initial choice is made, however, prior consent from the employer must be obtained before the employee may change treating physicians within the same field or specialty. Id.
Further, La.R.S. 23:1203(A) provides, in pertinent part, as follows:

*301 In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services.
In consideration of whether the defendant should have authorized the treatment by Dr. Rambach, the workers' compensation judge explained as follows in his written reasons for ruling:
Dr. Waldman treated the claimant for nine and a half months, from the time of his injury on October 16, 1995, until the time of his discharge. La.R.S. 23:1121 B provides the employee shall have the right to select one treating physician in any field or specialty. After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for change of treating physician within that same field or specialty. If the employer has not consented to the request for change of physician and it is determined by a court that such denial of consent was arbitrary, capricious, or without probable cause, the employer shall be liable for attorney's fees. Comeaux v. Sam Broussard Trucking, 657 So.2d 499[449] (La.App. 3 Cir.1995).
As was the case in Comeaux, supra, claimant had no interest in seeing another orthopedic [sic] until the first treating orthopedist discharged him to go back to work. The claimant is not entitled to a second doctor in the same field or specialty merely because the first discharges him to return to work. Moreover, the subsequent findings of the second orthopedist here did not reflect that Dr. Waldman's opinions were out of line. In fact, the second orthopedic [sic] likewise discharged the claimant within two and half [sic] months of initiating treatment, with no limitations or restrictions.
The same conclusion was reached in Guillotte vs. Dynamic Offshore Contractors, 628 So.2d 234 (La.App. 3 Cir.1993), where the Third Circuit held that claimant was not entitled to treatment by another orthopedist merely because the first orthopedist released him to return to work. Also, see Benoit v. Martco Partnership, 657 So.2d 210 (La.App. 3 Cir.1995); which held that the employer was not responsible for expenses of treatment by a second physician, when the first physician had released the employee to return to work.
It is the finding of this agency that Dr. Waldman's classification would be that of the claimant's treating orthopedist.
Claimant is not entitled to medical expenses incurred with Dr. Rambach because there was no sufficient reason to merit the change in doctors. All medical expenses relating to the treatment of Dr. Baer Rambach are denied because plaintiff was not entitled to treatment by a second orthopedic surgeon of his choice merely because the first orthopedist released him to return to work.
In Comeaux, 94-1631; 657 So.2d 449, this court concluded that a workers' compensation judge's determination regarding a claimant's de facto choice of physician is subject to the manifest error standard of review. Our review of the record reveals no error in the workers' compensation judge's conclusion that Dr. Waldman was the claimant's choice of physician.
The evidence indicates that the claimant had, indeed, been treated by Dr. Waldman since the accident occurred on October 16, 1995. He continued to seek Dr. Waldman's treatment until his final appointment in June 1996. Only after being advised that Dr. Waldman was releasing him to work as of August 1996, did the claimant request an examination by Dr. Rambach. Thus, we find the workers' compensation judge's decision supported by evidence contained within the record.

Penalties
The claimant asserts that the workers' compensation judge erred in failing to award penalties for the untimely payment of both medical expenses and disability benefits following the consent judgment entered into following the May 23, 1996 hearing. He contends that failure to make payments pursuant *302 to this consent judgment triggers La. R.S. 23:1201(G). Wiley first contends that the defendant had notice of his physical therapy bills and, despite this notice, failed to pay for them until March 6, 1997. Further, he contends that penalties should have been assessed for failure to pay Dr. Rambach's bills and for two disability benefit payments which, he alleges, were paid untimely.
La.R.S. 23:1201(G) provides as follows:
If any award payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one hundred dollars per day together with reasonable attorney fees, for each calendar day after thirty days it remains unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such award, unless such nonpayment results from conditions over which the employer had no control. No amount paid as a penalty under this Subsection shall be included in any formula utilized to establish premium rates for workers' compensation insurance. The total one hundred dollar per calender day penalty provided for in this Subsection shall not exceed three thousand dollars in the aggregate.
In denying the claimant's request for penalties for untimely payment of physical therapy expenses, the workers' compensation judge wrote as follows:
A review of the record indicates that the physical therapy bill was not submitted to the employer or the third party administrator prior to January 30, 1997. The record is, as well, silent to the request for authorization of these services. Payment of the bill, allegedly in accordance with the fee schedule, was made within 60 days of its submission on January 30, 1997.
In light of the late submission for payment of these services, along with La. R.S. 23:1142(B) requirements that a health care provider be limited to $750.00 for unauthorized non-emergency medical treatment, the imposition of penalties and attorney's fees is not warranted.
Like the workers' compensation judge, we conclude that the record now before us indicates that the physical therapy bill was not submitted to the employer until January 1997. The record further indicates that, within sixty days of this submission, the physical therapy expenses were paid, despite having not been previously approved by the employer. Accordingly, we find no error in this aspect of the judge's denial of penalties. Neither do we find error in the refusal to award penalties for the failure to pay Dr. Rambach's expenses in light of our above finding on these expenses.
With regard to the alleged untimely payments of disability benefits, the only evidence introduced into the record in this regard was the testimony of the claimant. He testified only that, following the May 1996 hearing, the defendant delayed payments on two separate occasions. He stated that one payment was three weeks late while another payment was one month late. This was the only evidence entered into the record in this regard. In view of this limited evidence and the plaintiff's failure to address the issue in his disputed claim for compensation and pre-trial proposed findings of fact, we do not conclude that the workers' compensation judge erred in neither addressing this in his written reasons for ruling nor in refusing to award penalties for this alleged late payment.
Accordingly, we conclude that this assignment is without merit.
Attorney's Fees
Finally, the claimant asserts that the workers' compensation judge erred in refusing to award attorney's fees for, among other things, the termination of benefits and the denial of Dr. Rambach's treatment and untimely payment of physical therapy expenses.
La.R.S. 23:1201.2 provides for the award of attorney's fees in the following instance:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable *303 attorney fees for the prosecution and collection of such claims....
In denying the request for both penalties and attorney's fees, the workers' compensation judge wrote only the following:
It is noted the complex nature of this dispute. In light of the claimant's past medical history and education level, this case was handled competently by the defendant. Penalties and attorney's fees are not proper in this matter.
We too conclude that the defendant did not act arbitrarily and capriciously in terminating the claimant's benefits. In consideration of the above-described opinions of Dr. Waldman and Dr. Kilroy, along with information regarding the claimant's previous injuries, we find that the record adequately supports the trial judge's conclusion that the defendant's actions were not arbitrary or capricious. Therefore, the lower court correctly found that attorney's fees are not proper in the instant matter.

DECREE
For the foregoing reasons, the decision of the Office of Workers' Compensation is affirmed. All costs of this proceeding are assigned to the claimant, Ronnie Wiley.
AFFIRMED.
NOTES
[1] La.R.S. 23:1221(1) provides, in full, as follows:

(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (1)(a) of this Paragraph, compensation for temporary disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
(d) An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made, and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required, or six months after the injury, whichever first occurs. If the claimant contends that his disability is of a temporary nature, but extends beyond this six-month period, he must submit a claim for extension of the period of temporary total disability under R.S. 23:1310.3.