MOORE, J.
 

 j,St. Francis Medical Center appeals a judgment finding that it failed to reasonably controvert its employee Marcella Reed’s request to change her treating orthopedic surgeon, and imposing a penalty of $2,000 and attorney fee of $5,000. The Workers’ Compensation Judge (“WCJ”) focused solely on the disparate accounts of Ms. Reed’s office visit of April 10, 2007, to Dr. Brian Bulloch, her chosen orthopedic surgeon, and accepted Ms. Reed’s recollection of the incident. In spite of the WCJ’s credibility call, we find no proof of medical necessity to obtain a change of physician in the chosen specialty under La. R.S. 23:1121 B. We therefore reverse.
 

 Factual Background
 

 The parties stipulated that Ms. Reed was employed by St. Francis as a housekeeper at an average weekly wage of $343.53, that she injured her back lifting a large bucket of water at work in July 2005, and that St. Francis paid her weekly indemnity benefits of $229.03. Ms. Reed executed a choice of physician form naming Dr. Bulloch as her treating orthopedic surgeon; St. Francis paid for this treatment.
 

 In March 2007, St. Francis learned that Ms. Reed had not seen Dr. Bulloch in over a year, since late August 2005, and retained a nurse case manager, Jennifer McClain, to expedite her rehabilitation. Ms. Reed returned to Dr. Bulloch on March 20, 2007; he ordered an MRI and his office scheduled a return appointment for April 10 to review the results. Ms. McClain scheduled a rehabilitation conference with Dr. Bulloch to follow immediately afterward, at 11:15 am on April 10. Ms. McClain notified Ms. Reed’s counsel of this as required by R.S. 23:1127 C.
 

 |gMs. Reed and Ms. McClain gave differing accounts of what happened on April 10. Ms. Reed testified that she expected Ms. McClain to talk to Dr. Bulloch
 
 after
 
 the examination, but instead Ms. McClain came right into the examining room
 
 during
 
 it. Ms. Reed asked her to leave, but she stayed, monopolizing the discussion with the doctor; Dr. Bulloch never once spoke to Ms. Reed. Then, after Ms. Reed left, Ms. McClain stayed in the room talking to him. Feeling that Dr. Bulloch no longer had her best interest at heart, Ms. Reed decided to request a new orthopedic surgeon. Ms. Reed also testified that Dr. Bulloch “will not treat” her.
 

 Ms. McClain testified that she sat with Ms. Reed in the waiting room before her appointment. When the nurse called Ms. Reed, Ms. McClain escorted her to the examining room and then waited outside in the hall; however, Dr. Bulloch’s nurse promptly advised her there would be no examination, only a review of MRI results, and Ms. Reed told her (Ms. McClain) through the open door to come in. She did, and Ms. Reed never told her to leave. In the room, Ms. Reed mostly told Dr. Bulloch about a cyst on her back. Dr. Bulloch advised them that Ms. Reed would benefit from physical therapy and then an FCE, and gave her a prescription for the
 
 *827
 
 therapy. After this, both women left the examining room and Ms. McClain had no further conversation with the doctor.
 

 The other person involved, Dr. Bulloch, testified by deposition that he had no specific recollection of the event. He stated, based on his office notes, that there was no physical examination that day, only a conference to review the MRI and assess Ms. Reed’s treatment options, and that both MsJjReed and Ms. McClain were present. He could not recall if Ms. Reed asked Ms. McClain to leave the room, but patients normally did not object to having case managers present; also, he did not dictate into his notes that Ms. Reed asked her to leave. In addition, he could not recall
 
 any occasion
 
 when a case manager refused to leave when asked. He testified that based on the MRI, Ms. Reed would not benefit from surgery, but should try some physical therapy, followed by an FCE and impairment rating. His progress note stated, “I believe that she is at maximum medical improvement or will be so after the therapy program is completed.” He denied that Ms. McClain influenced his diagnosis in any way, and did not recall talking to her after the patient left.
 

 On April 12, the therapy center notified Ms. McClain that Ms. Reed had not yet begun her therapy; Ms. McClain asked again on April 17, and found that she still had not shown up. The next day, Ms. McClain faxed a letter to Dr. Bulloch, stating that Ms. Reed had not yet begun therapy, and asking if any other treatment options were available. She later learned that Ms. Reed actually attended her first therapy session on April 18.
 

 Ms. Reed’s attorney faxed a letter to Dr. Bulloch, directing him to “disregard Jennifer McClain’s erroneous and probably intentionally misleading fax to you.” He then faxed a letter to St. Francis’s counsel, requesting a change of orthopedic surgeon from Dr. Bulloch to Dr. John Ferrell “due to interference from St. Francis’s nurse case manager, Jennifer McClain.” The letter specified that Ms. McClain intruded on Ms. Reed’s physical exam “in clear violation of my client’s rights,” for which he was Rfiling a civil suit. The letter also asserted that Ms. McClain sent the doctor an “erroneous and apparently false fax” in an effort to interject herself into the medical treatment. As a result, “my client has no confidence in Dr. Bulloch and I believe she is entitled to change doctors.”
 

 Trial Evidence
 

 On May 3, Ms. Reed filed the instant disputed claim, seeking consent to change her orthopedic surgeon, plus penalties and attorney fees.
 

 At a hearing in July 2007, Ms. Reed testified as outlined above. She was obviously confused and befuddled. She would not confirm that she read Ms. McClain’s letter, as she did not bring her glasses to the hearing. At one point, she denied making each of the allegations in her disputed claim, or even that they were true. However, she ultimately stated that Ms. McClain had intruded on her medical exam and talked to the doctor out of her presence, and this diminished her trust in Dr. Bulloch. She also felt that Dr. Bulloch would no longer treat her since she filed the civil suit against St. Francis. At the close of the hearing, the WCJ found that Ms. McClain interfered with Ms. Reed’s medical treatment, in effect depriving her of treatment from her chosen physician, so Ms. Reed was entitled to a new orthopedic surgeon.
 

 At a second hearing in August 2008, Ms. McClain testified as outlined above. She stressed that Ms. Reed never asked her to leave the examining room, and that when they both left, Ms. Reed seemed perfectly content with her medical care. She maintained that only after faxing Dr. Bulloch
 
 *828
 
 on April 18 did she learn that Ms. Reed attended her first therapy |ssession that very day, and she had no intention of misleading the doctor. She admitted that she could have written Ms. Reed’s lawyer before faxing the doctor, but she simply did not.
 

 The WCJ stated the case was a credibility issue: Ms. Reed and Ms. McClain gave divergent accounts of the April 10 conference, and Dr. Bulloch’s deposition was unhelpful in resolving the conflict. The WCJ accepted the claimant’s version, noting “no other reasonable explanation for Ms. Reed’s sudden displeasure with Dr. Bul-loch’s treatment” except for those she alleged; Ms. Reed was not ingenious enough to fabricate reasons to change her doctor; Ms. McClain was determined to eliminate medical services for Ms. Reed; and Ms. McClain advised the doctor of her failure to attend therapy before making any attempt to facilitate the services. Further, St. Francis should have been aware of Ms. Reed’s reasons for wanting to change her doctor. The WCJ imposed a penalty of $2,000 and attorney fee of $5,000.
 

 St. Francis has appealed, raising two assignments of error.
 

 Discussion
 

 By its first assignment of error, St. Francis urges the WCJ erred in failing to find that it reasonably controverted Ms. Reed’s request for a change of physician. First it contests the WCJ’s finding that it prevented Ms. Reed from obtaining medical treatment from Dr. Bulloch, chiefly because Dr. Bulloch expressly denied this. Second, it argues that the right to a treating physician under R.S. 23:1221 B(l) is not a right to have multiple treating physicians.
 
 Thompson v. The Animal Hospital,
 
 39,154 (La.App. 2 Cir. 12/15/04), 889 So.2d 1193. Citing Dr. Bulloch’s report that she had reached maximum medical improvement, St. Francis argues that the claimant is not entitled to get a new doctor just because the original doctor released her to return to work.
 
 Wiley v. Kenneth Parker Logging,
 
 97-1247 (La.App. 3 Cir. 3/6/98), 711 So.2d 297. St. Francis suggests that Ms. Reed’s sudden dissatisfaction with Dr. Bulloch arose not from any conduct on Ms. McClain’s part, but on the doctor’s decision to declare her at maximum medical improvement and order only therapy. It concludes that the evidence is insufficient to support Ms. Reed’s request for a change of physician in the specialty of orthopedic surgery.
 

 Ms. Reed responds that the WCJ’s findings are subject to manifest error review. She rejects Ms. McClain’s claim to be a patient advocate as “a cruel joke and mockery of the workers’ compensation system.” Going outside the record, Ms. Reed argues that case managers’ only purpose is to curtail medical treatment as soon as possible; hence, it was immaterial whether Ms. McClain actually influenced Dr. Bul-loch’s care, but only that she undermined Ms. Reed’s confidence in him. She concludes that the WCJ’s decision is fully supported by the record.
 

 Medical examination of an injured employee is regulated by La. R.S. 23:1121. The provision pertinent to this case states:
 

 B. (1) The employee shall have the right to select one treating physician in any field or specialty. * * * After his initial choice the employee shall obtain prior consent from the employer or his workers’ compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for a change to a treating physician in another field or specialty.
 

 | /This statute gives an injured employee an absolute right to select one physician in any field without the approval
 
 *829
 
 of the employer.
 
 Smith v. Southern Holding Inc.,
 
 2002-1071 (La.1/28/03), 839 So.2d 5. However, the statute does not invest the claimant with the right to multiple treating physicians.
 
 Cheatham v. Luberski Inc.,
 
 43,603 (La.App. 2 Cir. 9/17/08), 996 So.2d 373;
 
 Thompson v. The Animal Hospital, supra; Jasper v. Memorial Medical Center,
 
 2003-0489 (La.App. 4 Cir. 6/11/03), 853 So.2d 21. The claimant is not entitled to treatment by a new choice of orthopedic surgeon simply because the original one released her to return to work.
 
 Cheatham v. Luberski, supra; Wiley v. Kenneth Parker Logging, supra.
 
 As with a claim for medical expenses under La. R.S. 23:1203, the claimant must show that a choice of a new treating physician is medically necessary.
 
 Cheatham v. Luberski supra; Thompson v. The Animal Hospital, supra; Captain v. Citgo Petr. Corp.,
 
 2006-481 (La. App. 3 Cir. 9/27/06), 940 So.2d 731;
 
 Scott v. Piccadilly Cafeteria,
 
 1997-1584 (La. App. 3 Cir. 4/1/98), 708 So.2d 1296.
 

 On close examination, we find the record does not support a finding that a change of orthopedic surgeon is medically necessary. There is no medical evidence to contradict Dr. Bulloch’s assessment that Ms. Reed is at or near maximum medical improvement, or to undermine his prescription of physical therapy. Aside from Ms. Reed’s own testimony, there is no evidence that anything done by St. Francis or Ms. McClain altered Dr. Bulloch’s delivery of medical care; to the contrary, the doctor firmly stated that Ms. McClain’s involvement did nothing to affect his professional | ¿judgment. Given the lack of evidence of medical necessity, the judgment must be reversed.
 

 We are, of course, sensitive to the fact-finding discretion of the WCJ; the appellate court is bound to accept her resolution of disputed facts even if, sitting as a trier of fact, it might have reached a different conclusion.
 
 Dean v. Southmark Construction,
 
 2003-1051 (La.7/6/04), 879 So.2d 112. We also acknowledge some of the policy considerations raised in Ms. Reed’s brief, notably that case managers work for the compensation carrier and thus are motivated to reduce medical expenses. However, we do not accept the WCJ’s solution of resolving a credibility dispute in favor of the claimant’s “displeasure” with her chosen physician, thus entitling her to select a new one. This would circumvent the requirement of medical necessity, negate Section 1121’s “one treating physician” rule, and authorize doctor shopping. In short, the WCJ’s labored analysis of the witnesses’ credibility will not overcome the lack of evidence of medical necessity for the requested change. The first assignment of error has merit.
 

 By its second assignment of error, St. Francis urges the WCJ erred in awarding a penalty and attorney fee. St. Francis contends that it reasonably relied on the independent records of Dr. Bulloch, negating any liability for the penalty and attorney fee under La. R.S. 23:1201 F(2).
 

 Ms. Reed responds that the record fully supports the assessment of a penalty and attorney fee, and that the amount awarded is reasonable under the usual criteria.
 
 Harvey v.B E & K Const.,
 
 33,475 (La.App. 2 Cir. 8/23/00), 770 So.2d 819.
 

 | ¡^Failure to consent to the employee’s “request to select a treating physician or change physicians when such consent is required by R.S. 23:1121” shall result in the assessment of a penalty. La. R.S. 23:1201 F. However, the penalty is not imposed “if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” R.S. 23:1201 F(2). To “reasonably controvert” a claim means the employer or insurer had “some valid reason or evidence upon which to
 
 *830
 
 base [the] denial of benefits.”
 
 Brown v. Texas-LA Cartage Inc.,
 
 98-1063 (La.12/1/98), 721 So.2d 885;
 
 Lemons v. Georgia-Pacific Corp.,
 
 42,950 (La.App. 2 Cir. 2/13/08), 976 So.2d 307,
 
 writs denied,
 
 2008-0587, -0590 (La.5/2/08), 979 So.2d 1288, 1289. If the employer or insurer’s conduct arises from a nonfrivolous legal dispute or from factual or medical evidence that reasonably counters the claimant’s showing, the penalty and attorney fee are not imposed.
 
 Brown v. Texas-LA Cartage, supra; Lemons v. Georgia-Pacific Corp., supra.
 
 The penal provisions of the workers’ compensation statute are strictly construed.
 
 Williams v. Rush Masonry,
 
 98-2271 (La.6/29/99), 737 So.2d 41;
 
 Freeman v. Triad Builders,
 
 39-657 (La.App. 2 Cir. 5/11/05), 902 So.2d 1220,
 
 writ denied,
 
 2005-1562 (La.12/16/05), 917 So.2d 1118.
 

 St. Francis relied on Dr. Bulloch’s progress note that Ms. Reed was at or near maximum medical improvement; despite her contretemps -with Ms. McClain, Ms. Reed has not shown that the doctor’s medical opinion was faulty or unreliable. In the absence of evidence that the requested change of orthopedic surgeon was medically necessary, St. Francis’s conduct cannot |1flbe deemed frivolous or lacking in factual basis. On this showing, the WCJ was plainly wrong to assess a penalty and attorney fee. The judgment will be reversed.
 

 Conclusion
 

 For the reasons expressed, the judgment is reversed. All costs are to be paid by the appellee, Marcella Reed.
 

 REVERSED.