# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 23-674 c/w 23-675


**TEMIKA WILLIAMS GUILLORY**

**VERSUS**

**ST. MICHAEL PFU, LLC, D/B/A THE CARE CENTER OF DEQUINCY**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 03
PARISH OF CALCASIEU, NO. 21-06374
HONORABLE MELISSA ST. MARY, WORKERS' COMPENSATION JUDGE


\*\*\*\*\*\*\*\*\*\*


## LEDRICKA J. THIERRY
## JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Sharon Darville Wilson, Charles G. Fitzgerald and Ledricka J. Thierry, Judges.


**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

**Mark A. Ackal**
**Mark A. Ackal & Associates**
**110 E. Kaliste Saloom Road**
**Lafayette, LA 70505**
**(337) 237-5500**
**COUNSEL FOR DEFENDANT/APPELLANT IN 23-674 and**
**DEFENDANT/APPELLEE IN 23-675:**
     **St. Michael PFU, LLC, d/b/a The Care Center of DeQuincy**

**Marcus M. Zimmerman**
**949 Ryan Street, Suite 110**
**Lake Charles, LA 70601**
**(337) 474-1644**
**COUNSEL FOR PLAINTIFF/APPELLEE IN 23-674 and**
**PLAINTIFF/APPELLANT IN 23-675:**
     **Temika Williams Guillory**

**THIERRY, Judge.**

The employer, St. Michael PFU, LLC, d/b/a The Care Center of DeQuincy ("The Care Center"), appealed the judgment rendered by the Office of Workers' Compensation ("OWC") finding that the injured worker, Temika Williams Guillory ("Guillory"), sustained a work-related injury. Guillory answered the appeal and also filed a separate appeal. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

On May 11, 2018, Guillory was allegedly injured while in the course and scope of her employment as a van driver for The Care Center. Part of her job duties included pushing residents, including morbidly obese residents, in wheelchairs and loading and unloading them via a ramp in the back of the van. On the date of the incident, an obese patient in a bariatric wheelchair allegedly rolled over Guillory's right foot. Guillory continued working that day and for several weeks after the injury. She did not formally report the accident to her employer until August 31, 2018—over three months from the date of the accident.

The Care Center began paying Guillory workers' compensation benefits thereafter. On November 22, 2021, Guillory filed a Disputed Claim for Compensation against her employer, listing the bona-fide dispute as involving both her choice of physician and the employer's failure to reinstate her total temporary disability benefits or supplemental earnings benefits ("SEBs") at zero earning capacity. Guillory also requested penalties and attorney's fees. The Care Center answered the dispute and denied that Guillory was disabled. On April 5, 2022, The Care Center controverted her claim, determining that Guillory's alleged injury was not corroborated by the evidence.

The trial on the merits was held on May 8, 2023. The parties stipulated that all indemnity and medical treatment was paid through April 5, 2022, the date when the employer controverted the claim. In a written judgment, the Worker's Compensation Judge ("WCJ") found that Guillory met her burden of proving a work-related injury, as "all co-workers corroborated Claimant's testimony that a bariatric patient rolled over her foot while Claimant was attempting to remove the patient from the transportation van." The WCJ further found that the medical records corroborated Guillory's injury.

However, the WCJ also held that Guillory "did not meaningfully participate in the 4-week modified duty position offered by the Employer on September 2, 2021, although her treating physician and the Independent Medical Examiner both opined that she could return to work at sedentary status." Therefore, the WCJ found that Guillory was not entitled to indemnity benefits beyond "the time in which she abandoned that position."

Both Guillory and The Care Center filed an appeal with this court, seeking review of the above holdings. The appeal bearing docket number 23-674 was filed by The Care Center, while the appeal bearing docket number 23-675 was filed by Guillory. The appeals were subsequently consolidated, and we will address both appeals in this opinion.

## ASSIGNMENTS OF ERROR

As Defendant/Appellant in docket number 23-674, The Care Center alleges the following assignments of error:

1. The trial court manifestly erred in finding plaintiff proved a work related accident and injury as she failed to meet her burden of proof on this issue; the witness testimony, employment records, and medical evidence did not support or corroborate the claimant's

2

assertion that she sustained a work related accident and cast serious doubt on her version of the accident.

2. The trial court further erred in awarding claimant reimbursement of litigation expenses of $2,977.10, despite the finding that claimant is entitled to neither indemnity benefits nor medical expenses; the award of litigation expenses constitutes an abuse of discretion.

Guillory, as Plaintiff/Appellee, answers The Care Center's appeal and prays that:

1. This Honorable Court uphold the trial court's Judgment on the counts that a work accident occurred and appellee/claimant is entitled to reimbursement of litigation expenses in the amount of $2,977.10. But, that this Honorable Court reverse the trial Court's denial of indemnity benefits and the denial of allowing her treatment with Dr. Joseph Acosta (2nd choice of neurologist); and award indemnity benefits with appropriate interest and treatment by Dr. Acosta as prayed for.

2. The amended judgment be affirmed; and

3. Appellant be condemned to pay the legal costs in the trial court and on this appeal.

In the appeal bearing docket number 23-675, Guillory, as Plaintiff/Appellant, alleges two assignment of errors:

1. The WCJ manifestly erred or was clearly wrong in failing to award indemnity benefits to appellant effectively from the date of termination on April 5, 2022.

2. The WCJ manifestly erred or was clearly wrong in failing to find that appellant was entitled to medical treatment by neurologist Dr. Joseph Acosta.

## ANALYSIS

Standard of Review

An appellate court analyzes factual findings in workers' compensation cases under the manifest error standard of review. *Timberlake v. Christus Health Ctr. LA*, 13-166 (La.App. 3 Cir. 10/30/13), 124 So.3d 1201. In applying this standard, "the

3

appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Foster v. Rabalais Masonry, Inc.*, 01-1394, p. 2 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784. As we have previously explained:

> Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

*Foster*, 811 So.2d at 1162 (internal citation omitted) (alteration in original); *see also Young v. CB&L, LLC*, 20-619 (La.App. 3 Cir. 10/27/21), 329 So.3d 905.

Existence of a Work-Related Injury

The claimant bears the burden of proving a work-related accident by a preponderance of the evidence. *Clover v. Redfish Rentals, Inc.*, 22-470 (La.App. 3 Cir. 2/8/23), 357 So.3d 522. The Louisiana Supreme Court set forth the burden of proof for an unwitnessed accident in *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357, 361 (La.1992) (citations omitted):

> A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends.

*See also Ardoin v. Firestone Polymers, LLC*, 10-245, pp. 4–5 (La. 1/19/11), 56 So.3d 215.

In other words, when an accident is unwitnessed, as is the case here, an employee can meet her burden of proof when there is an absence of discrediting

4

evidence and there are corroborating circumstances to her testimony. Corroboration can come from testimony from others or through medical evidence.

At trial, Guillory explained the gap in reporting her work-related accident, testifying that her foot hurt immediately following the accident but that she thought the pain would eventually go away. She explained that she initially had no intention of filing a worker's compensation claim and thus continued to work, testifying: "Working is not something that I wanted to stop. I had kids to take care of." Mistie Duhon Nash, who processed workers' compensation matters at The Care Center, testified that Guillory was a good employee who did her job and worked as long as she was able to.

The Louisiana Supreme Court has held that a delay in reporting an injury "is more corroborative of her initial unawareness of the seriousness of the injury . . . than it is any cause to doubt her credibility about its occurrence." *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146, 1150 (La. 5/21/79); *see also Bruno v. Harbert Int'l Inc.*, 593 So.2d 357 (La.1992). Given Guillory's testimony, Nash's testimony, and the jurisprudence, we are unpersuaded that the delay in reporting proves the absence of a work-related injury.

In any event, our review of the record reveals that Guillory's version of the events was corroborated by the medical evidence. Guillory first sought medical treatment for her foot from Dr. Jalal Joudeh, her primary care physician, on June 26, 2018. The medical records reveal that Guillory reported bad pain and swelling in her right foot.

On August 30, 2018, she saw an orthopedic doctor, Dr. J. David Delapp, and began wearing a boot on her right foot. Dr. Delapp reported that Guillory had severe

5

sensitivity to touch and pain radiating through her right foot. Following the August 30, 2018 appointment, Guillory then reported her injury to The Care Center.

Guillory continued treating with Dr. Delapp. On January 3, 2019, Dr. Delapp stated in his medical records that: "[s]he is developing what appears to be complex regional pain syndrome or reflex sympathetic dystrophy." He noted that she had "[r]ight forefoot neuropathy with nerve sensitivity injury after crush injury at work. . . . " In June of 2019, he described her injury as tarsal tunnel syndrome.

In late 2019, Guillory began treating with Dr. Christopher Hebert, an orthopedic surgeon. Dr. Hebert diagnosed her with tarsal tunnel syndrome and complex regional pain syndrome ("CRPS"). Dr. Hebert recommended tarsal tunnel release surgery and related her diagnosis to a right traumatic ankle injury.

Perhaps most telling are the findings of the court-appointed independent medical examiner ("IME"), Dr. David Drez. Dr. Drez, who first evaluated Guillory on July 22, 2020, stated: "It is my opinion that this patient has a complex regional pain syndrome that is a result of the injury which she sustained on 5-11-2018." He, therefore, causally related his findings to the work accident that occurred on May 11, 2018. In a letter to the court dated April 20, 2022, Dr. Drez confirmed his previous findings and said that Guillory's "symptoms have not changed significantly but have become a little worse" since he first evaluated her on July 22, 2020. While Dr. Drez believed that a diagnosis of tarsal tunnel syndrome had not been firmly established, he said that if such was confirmed, then it was related to the work injury. Regardless, he related Guillory's CRPS diagnosis to the May 11, 2018 work accident.

On the other hand, The Care Center relies on the opinion of Dr. Alan C. Schroeder, defendant's choice of physician, as evidence that Guillory did not sustain

a work-related accident. Dr. Schroeder opined: "[Guillory] may have had some type of right foot pain initially with the accident with a large obese person in a wheelchair rolling over her foot. I am not able to reliably relate any other diagnoses to her work episode." Dr. Schroeder also asserted that he found no evidence of a crush injury and that Guillory suffered no disability or impairment from the episode.

The Care Center also points out that Guillory treated with non-orthopedic doctors and failed to mention her foot injury to them. One visit included treatment for an ovarian cyst and another visit included treatment for chest pain. We do not find the failure of Guillory to share her foot injury with doctors in unrelated fields to be compelling.

The medical evidence set forth by Guillory's treating physicians, coupled with the IME's opinion, supports Guillory's contention that she sustained a work-related injury on May 11, 2018. Although there is conflicting evidence, "[w]here there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong." *Foster*, 811 So.2d at 1162. The WCJ's choice to find that Guillory met her burden in proving a work-related injury, therefore, was not manifestly erroneous.

Awarding of Costs

The Care Center cites La.R.S. 23:1310.9 in support of its contention that the trial court erred in awarding costs to Guillory. Louisiana Revised Statutes 23:1310.9 states:

> If the workers' compensation judge before which any proceedings for compensation or concerning an award of compensation have been brought, under the Workers' Compensation Act, determines that such proceedings have not been brought on a reasonable ground, or that denial of benefits has not been based on a reasonable ground, the workers' compensation judge shall assess the total cost of the

7

proceedings to the party who has brought them or the party who has unreasonably denied payment of benefits.

Contrary to The Care Center's contentions, this statute does not preclude the trial court from awarding costs in its discretion. It mandates the assessing of costs in situations when the proceedings have not been brought on a reasonable ground or when the denial of benefits has not been based on a reasonable ground. The trial court did not make such a determination in this case, and therefore that statute is inapplicable.

Under La.Code Civ.P. art. 1920, costs are generally paid by the party cast in judgment. Furthermore, "[t]he court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." La.Code Civ.P. art. 1920. As we have previously held, "[i]t is well settled that a trial court has broad discretion in the assessment of court costs." *Davis v. Sonnier*, 96-515, p. 18 (La.App. 3 Cir. 11/6/96), 682 So.2d 910, 920. A court will not reverse a judgment assessing court costs unless the trial court abused its discretion. *Trahan v. Plessala*, 14-795 (La.App. 3 Cir. 2/4/15), 158 So.3d 209. In workers' compensation cases, the same principle applies, as La.R.S. 23:1317(B) expressly gives workers' compensation judges the discretion to award costs.

We find that the WCJ did not abuse its discretion in assessing costs of $2,977.10 against The Care Center. At trial, Guillory introduced into evidence copies of invoices and checks substantiating her $2,977.10 claim for costs. While the WCJ denied Guillory's request to see a neurologist and denied her reinstatement of indemnity, the WCJ found that Guillory met her burden in establishing a work-related injury. It was within the WCJ's broad discretion to assess costs against the employer.

Failure to Reinstate Benefits

In both her answer to The Care Center's appeal and in the assignments of error in her appeal, Guillory asks this court to affirm the portion of the WCJ's judgment relating to the existence of a compensable work-related injury and the award of costs but seeks reversal of the WCJ's denial of indemnity benefits beyond April 5, 2022, the date when The Care Center controverted the claim. Alternatively, Guillory alleges that, in the event this court agrees with the WCJ's factual findings, she is still legally entitled to SEBs, less the amount she would have made working the modified job.

An employee is entitled to receive SEBs when she sustains a work-related injury that results in an inability to earn at least ninety percent or more of her pre-injury wage. La.R.S. 23:1221(3)(a)(i); *see also Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551. The employee bears the initial burden of proof to show that the injury resulted in an inability to earn that amount. Once this burden is met, the burden shifts to the employer who must prove that the employee is physically able to perform a certain job and that such a job was offered to the employee or available to the employee in her or the employer's reasonable geographic location. La.R.S. 23:1221(3)(c)(i); *Banks*, 696 So.2d 551.

Here, the WCJ found that Guillory met the first part of her burden—that she sustained a work-related injury. Although not explicitly stated in the judgment, the WCJ presumably found that Guillory met the second part of her burden—proving that the work-related injury caused an inability to earn at least ninety percent or more of her pre-injury wage—in light of its decision not to reverse the previous indemnity benefits paid to Guillory by The Care Center.

Since Guillory met her burden, the burden then shifted to The Care Center to prove that Guillory was physically able to perform a certain job and that such a job was offered to her. The Care Center offered Guillory a sedentary position of answering phones, taking messages, and taking the temperature of visitors for a trial period of four weeks, three days a week, two hours a day. Guillory attempted the modified job but did not complete it, testifying that "[i]t didn't go well." She explained that she was in constant pain, which she described as "either burning, stinging, throbbing."

Despite Guillory's subjective complaints, there is ample evidence in the record showing that Guillory was able to return to a sedentary work position, including the one offered by The Care Center. Guillory underwent a functional capacity evaluation ("FCE") on February 22, 2022, in which Christopher Hoffpauir, a physical therapist, found that Guillory demonstrated abilities within the light and sedentary physical demand characteristics, subject to the following restrictions: lifting up to fifteen pounds, occasional carrying up to ten pounds, occasional standing and walking, and avoidance of crouching.

Following the results of the FCE, Guillory's treating physician also determined that she could work a sedentary position. Throughout 2021 and early 2022, Dr. Hebert issued "Work Status" letters stating that Guillory was unable to return to work pending treatment. However, in a medical record dated March 30, 2022, Dr. Hebert noted the FCE, lifted the no work status, and stated that he "[w]ill make [i]t permanent that she is allowed sedentary work only."

Dr. Drez, in his independent medical evaluation, believed Guillory could return to her job as a driver of a transportation vehicle. Following a July 22, 2020 evaluation of Guillory, Dr. Drez stated:

I do not think that she should be involved in any activity that requires walking or standing for any periods of time. I do think that she is capable of other, more sedentary type o[f] work. Since she is a driver, I do think she could return to the activity of driving her transportation vehicle.

When asked to reexamine and review Guillory's case on April 20, 2022, Dr. Drez did not amend this finding, thus indicating no change in his belief that she could return to work as a transportation driver. Therefore, the WCJ was not manifestly erroneous in finding that "Claimant should have been able to perform the 4-week modified position offered by the Employer."

However, the WCJ did err when it found that Guillory was not entitled to any indemnity benefits after she "abandoned" that position. Although The Care Center proved the availability of a job within Guillory's restrictions, the job was limited to six hours a week—far less than the amount of hours she worked pre-injury and thus resulting in far less wages. Under the applicable statutory laws, it was legal error for the WCJ to find that Guillory was not entitled to reinstatement of any amount of indemnity benefits. Simply put, the WCJ incorrectly applied the statute.

As previously mentioned, factual findings in workers' compensation cases are evaluated under the manifest error standard of review. However, the interpretation of workers' compensation statutes "is a question of law and warrants de novo review to determine whether the ruling was legally correct." *Johnson v. Off. of Tourism*, 19-853, p. 5 (La.App. 3 Cir. 5/6/20), 297 So.3d 1070, 1074 (citations omitted). We, therefore, apply the de novo standard of review to this ruling.

SEBs are calculated based on the difference between the average monthly wages at the time of injury and the average monthly wages that an employee earns, or is able to earn, after the injury, multiplied by 66.67 percent. La.R.S. 23:1221(3)(a)(i). When an employee is not engaged in any employment, or is

11

earning less than she is able to earn, the amount determined to be the wages she would have earned:

> shall in no case be less than the sum the employee would have earned in any employment or self-employment . . . which [s]he was physically able to perform, and (1) which [s]he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employer's community or reasonable geographic region.

La.R.S. 23:1221(3)(c)(i). "That is, the amount of an award of SEBs is based upon the difference between the claimant's pre-injury average monthly wage and the claimant's proven post-injury monthly earning capacity." *Russell v. Sewerage & Water Bd. New Orleans*, 15-380, p. 16 (La.App. 4 Cir. 2/17/16), 187 So.3d 94, 102.

In *Russell*, 187 So.2d at 102 (emphasis in original), the court explained that a refusal to accept or engage in part-time work merely reduces the amount of SEBs owed rather than eliminates an award of SEBs: "Because there was part-time work offered to [the claimant] that he was physically able to do, the [employer] is entitled here to *reduce* the amount of his weekly supplemental earnings benefit but not to restrict or eliminate an award of SEBs."

Here, too, the WCJ determined that Guillory should have been able to earn the wages set forth in the four-week modified position, which meant that Guillory's SEBs should have been reduced, not eliminated. The sedentary, modified position offered by The Care Center paid Guillory $8.75 per hour, or $52.50 per week ($8.75 per hour multiplied by six hours per week). The parties stipulated at trial that Guillory's pre-injury average weekly wage was $498.92, with weekly indemnity benefits of $332.61. Thus, the modified position clearly paid less than ninety percent of her pre-injury wage.

Under La.R.S. 23:1221(3), Guillory is entitled to 66.67 percent of the difference between her pre-injury weekly wage of $498.92 and the weekly amount she is able to earn of $52.50. We thereby reverse the portion of the judgment which denies Guillory reinstatement of benefits. We remand this matter to the Office of Workers' Compensation to precisely calculate the SEBs due to Guillory, to determine when the reduction in SEBs began and will end, and to render an appropriate judgment.

Denial of Treatment with a Second Neurologist

Guillory also argues that the WCJ manifestly erred by failing to find that Guillory was entitled to medical treatment by neurologist, Dr. Acosta. The WCJ held that because Guillory "has declined to undergo the recommended surgery and has already been seen by her choice of neurologist, Claimant has not shown good cause why treatment with a second neurologist is necessary."

> Louisiana Revised Statutes 23:1121 states, in relevant part:
>
> B.(1) The employee shall have the right to select one treating physician in any field or specialty . . . The workers' compensation judge shall order the employer or payor to authorize the claimant's choice of physician unless the employer or payor can show good cause for his refusal. After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. . . .
>
> (2)(a) If the employee is treated by any physician to whom he is not specifically directed by the employer or insurer, that physician shall be regarded as his choice of treating physician.

As recognized in *Reed v. St. Francis Med. Ctr.*, 44,211, p. 7 (La.App. 2 Cir. 4/8/09), 8 So.3d 824, 829, the statute does not give a claimant the "right to multiple treating physicians." Rather, should a claimant choose to treat with a new physician, then "the claimant must show that a choice of a new treating physician is medically necessary." *Id.*

The record shows that Guillory already had been treated by a neurologist, Dr. Fayez Shamieh. While Dr. Hebert's records recommended that Guillory treat with Dr. Acosta, a different neurologist, Guillory did not present any evidence as to why a second neurologist was medically necessary. This assignment of error is without merit.

**DECREE**

For the foregoing reasons, we affirm the judgment of the WCJ as it relates to the establishment of a work-related injury, the denial to permit treatment with a second neurologist, and the awarding of litigation expenses of $2,977.10 to Guillory. We reverse the portion of the judgment which denies Guillory indemnity benefits due to her "abandonment" of the modified job position and remand this matter to the Office of Workers' Compensation to calculate the supplemental earnings benefits due to Guillory and for further proceedings consistent with this opinion. In regard to Guillory's appeal, which raises the same issues as her answer to The Care Center's appeal, the judgment of the trial court is affirmed in part, reversed in part, and remanded for the same reasons. Costs of both appeals are assessed against Defendant, St. Michael PFU, LLC, d/b/a The Care Center of DeQuincy.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 23-675 c/w 23-674


**TEMIKA WILLIAMS GUILLORY**

**VERSUS**

**ST. MICHAEL PFU, LLC, D/B/A THE CARE CENTER OF DEQUINCY**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 21-06374
HONORABLE MELISSA ST. MARY, PRESIDING JUDGE


**\*\*\*\*\*\*\*\*\*\***


**LEDRICKA J. THIERRY**
**JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of Sharon Darville Wilson, Charles G. Fitzgerald and Ledricka J. Thierry, Judges.


**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

**Marcus M. Zimmerman**
**949 Ryan Street, Suite 110**
**Lake Charles, LA 70601**
**(337) 474-1644**
**COUNSEL FOR PLAINTIFF/APPELLANT IN 23-675 and**
**PLAINTIFF/APPELLEE IN 23-674**
      **Temika Williams Guillory**

**Mark A. Ackal**
**Mark A. Ackal & Associates**
**110 E. Kaliste Saloom Road**
**Lafayette, LA 70505**
**(337) 237-5500**
**COUNSEL FOR DEFENDANT/APPELLEE IN 23-675 and**
**DEFENDANT/APPELLANT in 23-674**
      **St. Michael PFU, LLC, d/b/a The Care Center of DeQuincy**

**THIERRY, Judge.**

In this consolidated appeal, the employer, St. Michael PFU, LLC, d/b/a The Care Center of DeQuincy, appealed a judgment finding that the injured worker, Temika Williams Guillory ("Guillory"), sustained a work-related injury. Guillory answered the appeal and also filed a separate appeal. For the reasons assigned in *Guillory v. St. Michael PFU, LLC*, 23-674 c/w 23-675 (La.App. 3 Cir. __/__24), ___ So.3d ___, we affirm in part, reverse in part, and remand for further proceedings.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**